1. ELECTION CONTEST—CERTIFICATE OF NOMINATION—MATTERS OF SUBSTANCE.
     Under Laws 1896, c. 909, § 57, providing that independent nominations shall be made by a certificate subscribed by qualified electors, "each of whom shall add to his signature his place of residence, and make oath that he is an elector, and has truly stated his residence," the designation of residence and the oath are matters of substance, and are essential.

**2. SAME—CERTIFICATE OF NOTARY—IMPEACHMENT.**

On a hearing on the legality of a nomination before the officer with whom the certificate of nomination has been filed, affidavits of purported signers of the certificate are admissible to impeach the certificate of the notary public.

**3. SAME—NOTARY'S ADMISSION.**

It is competent for the notary himself to admit that he inadvertently failed to swear certain signers of the certificate.

**4. SAME—APPEAL—PRESUMPTIONS.**

On the hearing of a summary proceeding before a justice of the supreme court to review the determination of the secretary of state as to the validity of a certificate of nomination, facts offered to be proved by affidavits and testimony presented to the secretary of state, and by him erroneously rejected, will be assumed to have been proved.

**5. SAME—OBJECTIONS—PARTICULARITY.**

Under general objections to a certificate of nomination, signers of the certificate may testify that they never swore to the certificate.

Summary proceedings, under the election laws, to review the determination of the secretary of state in the matter of the certificate of nomination of Charles F. Adams for chief justice of the court of appeals, and in the matter of the nomination of Lawrence F. McParlin for the same office. The matters were heard practically as one proceeding. The secretary of state determined that in both cases the certificates were valid. On the same day the determination of the secretary was brought before a justice of the supreme court at chambers. The determination of the secretary in both cases is reversed.

Wm. J. Roche and J. Newton Fiero, for objectors.

Lafayette B. Gleason, Jas. A. Gray, and Wm. Kisselburgh, Jr., Dep. Atty. Gen., for certificate.

HERRICK, J. The above-entitled matters are heard practically as one proceeding. They are appeals from determinations of the secretary of state, made this day, and they come on for a hearing before me in the afternoon of the last day upon which a decision, to be effectual, can be made.

The objections raised are many, and some of the questions involved reach much further than the mere determination and decision of the cases now before me; and in the very brief time allotted to me to make an examination of the records, and to consider the questions involved, it is utterly impossible, both mentally and physically, for me to examine and adequately consider every objection made and every question raised. I may premise what I have to say in this matter by stating that, in construing the laws relating to independent nominations, the most liberal construction should be placed upon such laws in favor of the independent voter; and in independent nominations mere formal defects and irregularities should be ignored, or the certificates permitted to be amended, and that the courts should not be astute to discover, or overwilling to accept the discovery by others of, technical defects upon which such certificates of nomination can be declared null and void and set aside, but to hold that, when the spirit and substance of the laws have been observed, that is sufficient. The statute provides that, in reviewing a decision of the secretary of state, or other officer, the certificate of nomination is required to be filed with

a court, justice, or judge so reviewing, who shall "make such order in the premises as" "justice may require." Section 56, c. 909, Laws. 1896 (Election Code). What are the substantial requirements of an independent nomination? Such nominations are required to be made by electors of the state,—persons who are entitled to vote therein. Section 57 provides that: "Independent nominations shall be made by a certificate subscribed by such electors, each of whom shall add to his signature his place of residence, and make oath that he is an elector, and has truly stated his residence." The requirements set forth in that portion of section 57 that I have quoted are matters of substance. Each requirement is obviously to be a check upon the making of false or fraudulent certificates, and to enable anyone inspecting a certificate to discover the residence of the subscriber, so that he may investigate, and see whether, in truth and in fact, any such person entitled to vote resides at the place of residence named in the certificate. The oath required is matter of substance, as affording prima facie proof that the persons so subscribing the certificate did in fact subscribe the certificate, and are in fact electors of the state. These requirements are essential. Another requirement of the statute is that, where independent nominations are made of officers to be voted for by the people of the state, they can only be made by 6,000 or more voters of the state, of whom at least 50 must be electors in each county of the state, except the counties of Fulton and Hamilton, who shall subscribe to the certificate of such nomination. Section 57. Let us then proceed to inquire whether the statute has been complied with by the filing of such a certificate, subscribed and sworn to by at least 50 electors in each county.

The first that I call attention to is the certificate filed by electors of the county of Columbia. It has 51 names attached to it. The objectors presented the affidavits of four of the persons whose names are attached to such certificate, who swear that they were not sworn to such certificate either before or after signing the same. These affidavits the secretary of state refused to receive. The affidavit of the notary public whose name is attached to such certificate as having sworn all the signers thereto was also produced, and in it such notary swears that he accompanied one John Adams to witness signatures to the certificate of Charles F. Adams for the office of chief judge of the court of appeals, and that he "inadvertently failed to swear the following signers of the certificate above referred to." Then follow the names of nine persons whose names are attached to the certificate. This, also, the secretary of state refused to receive in evidence, and the contention is made that the certificate of the notary public cannot be impeached by affidavits.

A very large number of these proceedings have been had before me, and I am somewhat familiar with the proceedings taken before other justices and courts in these matters, and I understand it to be the general practice to hear them upon affidavits. The leading case, In re Fairchild, 151 N. Y. 359, 45 N. E. 943, was so heard; and while, perhaps, it is not evidence of the highest character, or as satisfactory as oral testimony, still it is that very commonly resorted to in summary applications of this character, and I think is sufficient. The

evidence offered to, and rejected by, the secretary of state is produced here upon this hearing, and I think can be considered by me; otherwise, the refusal of the filing officer to receive such evidence would deprive the parties desiring to review his decision of any adequate remedy, because of the lack of evidence. It would be rather an unheard-of proceeding, I think, for a court of justice to hold that the officer or magistrate taking evidence or acknowledgments should not be heard to explain that he had made a mistake or an error, and I think, therefore, that the secretary of state erred in refusing to accept the evidence offered that the persons named did not swear to the certificate; and, deducting the number of these persons from the total number of signers from the certificate, reduces the number of signers to 42.

In the case of People v. Petrea, 92 N. Y. 128, the defendant had filed certain objections to the grand jury by which he was indicted, and offered proof by affidavits of facts tending to show that the law under which the grand jury was organized was unconstitutional and void. Those affidavits were rejected, and the court, upon appeal, held that the offer to prove such facts was improperly overruled, and that the facts alleged must be deemed upon appeal to have been proved. See page 139. So here I think upon this review I must assume that the facts offered to be proved by the affidavits presented to the secretary of state, and rejected by him, were proved.

The next certificate which I propose to consider is that of the county of Monroe. Fifty-one names are attached to such certificate. Among others, appear the names of Charles A. Roden, 226 State street, and Henry Philipson, 226 State street. This list of names is headed "Rochester," and under State street, opposite the names of Roden and Philipson, appear marks which I assume to signify Rochester. If they do not, then the address required by the statute is not given. The objectors to the certificate offered the affidavit of Charles A. Roden, in which he swears that he resides at 226 State street, Rochester, and has resided there upwards of three years, and that he is acquainted with all the persons who reside at said number, and who have lived at said number for three years, and that he is the only person of that name who resides at said number; and he further swears that he never signed any petition or certificate of nomination of any person named Adams as a candidate for chief judge of the court of appeals, or acknowledged or verified any such certificate before Frederick L. Dutcher, or any other person. The affidavit of Henry Philipson sets forth the same facts as to himself. The secretary of state refused to receive these affidavits in evidence, and I think they should have been received, for the same reason that I have given in regard to the reception of affidavits in the Columbia county case. The effect of the affidavits of Roden and Philipson is to charge that their names were forged to the certificate. Standing uncontradicted, I think they require the deducting of those names from the certificate, which reduces the number to 49.

The next I call attention to is Essex county. The certificate of that county contains 56 names, among others, that of Cornelius Danaher. Mr. Danaher was sworn orally before the secretary of state, and testified that the certificate was brought to him by his employer, who

asked him to sign it; that, after he signed it, he went back to work, and that his employer took the petition away; that he knows Hosea B. Williard, the notary public whose name is attached to the certificate, and before whom all the signers purport to have been sworn, and Danaher says that Williard was not there when he signed it; that he did not see him that day, or within a day or two of that time, and did not say to him that he signed the paper or acknowledgment to him. After this testimony was received by the secretary of state, it was, upon motion of the counsel in favor of the certificate, stricken out. Thereupon the objectors offered the testimony of nine other persons, who they declared that they then and there had ready to be sworn as witnesses to the fact that they had not sworn to such certificate. The secretary refused to allow such evidence. The objection was made that no specific objection had been filed that the persons named had not been sworn to the certificate. The objectors thereupon asked leave to amend the certificate, which the secretary declined to allow.

There is no requirement of the statute requiring detailed objections, but, conceding it to be proper practice, the case is one where an amendment to the objection might have been properly allowed; but I think the case is covered by the general objections filed, and the testimony was admissible, and the secretary erred in striking out the testimony given by the witness Danaher, and in refusing to permit the objectors to swear the other witnesses proposed by them. The proceedings are summary proceedings, and cannot be governed by the same strict rules of pleadings or of evidence that are proper and required in ordinary proceedings in civil actions (In re Argus Co., 138 N. Y. 557, 34 N. E. 388); and, for the purposes of this review, we must assume that, but for the error of the secretary in striking out and rejecting such evidence, the objectors would have proved that 10 persons whose names are attached to such certificate, and purporting to have been sworn before the notary, were not in fact sworn, and rejecting such names reduces the number of signatures to 46. It was conceded upon the argument that, if the certificate of any one county was invalid, the nomination had not been made as required by the statute; and it follows, therefore, if I am correct in the conclusions at which I have arrived, as to any one of the three counties named, that Mr. Adams was not legally nominated, and that the determination of the secretary of state should be reversed.

There are objections made to a number of other counties of various kinds, which it is not necessary for me to consider. Objections are also made that the certificate, as a whole, is not made in good faith; that it was conceived in fraud, and executed by parties not members of the United Democracy, or of any other branch of the Democratic party; that the name assumed is illegal, and contrary to the statute. I refrain from discussing any of these questions, and have only considered such questions as seemed to me necessary for the determination of this case; and, even in those, my discussion has had necessarily to be brief. While, as I stated in the beginning, mere formal defects, irregularities, and technicalities should be disregarded, yet, in the cases that I have referred to, such a substantial part of the statute as that requiring the signers to swear to their signatures, and

that they were residents and electors of the state, has not been complied with; and when it appears that the certificates of officers before whom the affidavits purport to have been taken are false, and where it appears that the necessary number of names to another certificate has been eked out by forgeries, I cannot hold that they are mere technicalities, or mere formal irregularities and defects, which should be overlooked in a liberal construction of the statute.

Having arrived at the conclusion that the certificate of nomination of Mr. Adams for chief judge was insufficient, it follows that the committee named in such certificate to fill any vacancy was not legally designated, and, therefore, it had no power to place Mr. McParlin in nomination in place of Mr. Adams, who it appears has declined.

The determination of the secretary of state in both cases must therefore be reversed.