CASE 16—ELECTION CONTESTS—WILKINS AGAINST DUFFY FOR COUNTY
JUDGE AND GILL AGAINST MALLORY FOR COUNTY ATTORNEY.—NO-
VEMBER 12.

# Wilkins v. Duffy.
# Gill v. Mallory.

| 114 | 111 |
|-----|-----|
| f124 | 729 |
| 114 | 111 |
| 125 | 775 |

APPEALS FROM TODD CIRCUIT COURT.

PETITIONS DISMISSED AND CONTESTANTS APPEAL.    AFFIRMED.

ELECTION—NOMINATIONS—PETITIONS—PLACING NAMES ON BALLOTS.

Held:    1. Designating one in a petition of nomination as the "Re-
publican candidate," instead of the "candidate of the Repub-
lican party," does not affect its sufficiency.

2. Though a party nomination by petition is allowable only in case
of failure to nominate by convention or primary, the name
of the person nominated by a petition, not stating there was
no other nomination, should be put on the ballot of that party
by the clerk; he knowing that there was no other nomination
by the party for the office, and that no one claimed it.

3. A petition of nomination for a party is not insufficient because not
stating that petitioners are members of the party; the statute
only requiring that it be stated that they are qualified, and
desire to vote for him for the office.

4. Failure of the clerk to place the names of candidates on the
ballot under the title and device of the Republican party, as
they were entitled to have them placed, and placing them un-
der the title of the Independent Republican party, though clear-
ly affecting the result of the election, will not vitiate it; it
being claimed that the action of the clerk was in reliance on
the opinion of the attorney general in the interpretation of an
opinion, susceptible of the misconstruction put on it, which
would indicate that the clerk did not act from a corrupt or
fraudulent motive, and he being entitled to the presumption
that he acted honestly; and Laws Ex. Sess. 1900, c. 5, section
12, authorizing an election to be declared void only where it
appears that there was "fraud, intimidation, bribery or vio-
lence" in the conduct of the election.

Wilkins v. Duffy. Gill v. Mallory.

**J. D. STANDARD** and **B. B. PETRIE,** for appellants

We maintain:

1. That the failure of the clerk to give appellants the benefit of their party title and device to which they were unquestionably entitled was to deny him the right guaranteed by the Constitution of a free and equal election.

2. Even had the petitions of nomination been defective, the clerk having received and filed them without question, and having, after ample time for deliberation promised them before the time for filing petitions had expired, that he would place their names on the ballots as requested, his failure to do so was such fraud upon their rights as would necessarily vitiate the election.

3. After the clerk determined that ·he would not place the names of appellants under their party title and device, he should at once have informed them of this fact and given them an opportunity either to test their rights in the courts or to select a device for themselves.

It was contended, and was so held by the lower court, that in order to nullify and render void the election, it must not only be shown that there was fraud, such as would prevent a fair election, but further that the appellees participated therein.

Conceding this to be true, we are at a loss to see how the court could hold that the appellee, Mallory, was not connectel with the fraud, when the evidence shows that he was, all along, the counsellor and advisor of the clerk and influenced him in committing the frauds which he did. Whilst the conduct of the clerk is inexcusable, it is certainly more excusable than the advice and counsel of appellee, Mallory, who was one of the direct beneficiaries of the fraud.

Our view of the cause is that the statute, and the ruling of the courts thereunder, do not attempt to establish the doctrine that a candidate must be a party to the fraud in order to have the election declared void.

### AUTHORITIES CITED.

Southall v. Griffith, 18 Ky. Law Rep., 1134; Constitution of Ky., Bill of Rights, sec. 6; Hocker v. Pendleton, 19 Ky. Law Rep., 135; Hollon v. Center, 19 Ky. Law Rep., 1134.

**PERKINS & TRIMBLE** and **J. H. HAZELRIGG,** for appellees.

It is not contended that either of these two contestants received a majority of the votes cast for the office for which he was a candidate, but it is alleged that the county clerk im-

Wilkins v. Duffy.   Gill v. Mallory.

properly arranged the official ballot, and fraudulently placed the names of certain candidates upon the ballot in such a manner as to confuse and mislead the voters and in this way there was no valid election.

All of these averments being denied, we submit that the proof fails to sustain them.

The fact, if it is a fact, that the clerk said that he intended to put contestants' names under the party device does not render him liable to the charge of fraud. He, being no lawyer, may have so intended, and may have thought it was his duty to do so, before being advised to the contrary by the attorney general.

Our contention is that the clerk could not legally place the names of all the Republican candidates under the party device under the manner in which they were nominated. This question has been settled by this court in the case of Creech v. Davis, &c., 21 Rep., 325.

It can not be seriously contended that appellants' petitions of nomination, came up to the requirement of the statutes. The petitioners do not claim to be Republicans, and do not show that there has been no Republican convention. The clerk has therefore failed in no duty in not putting appellant's names under the log cabin.

But if the clerk acted ignorantly or fraudulently, he alone must suffer. The attempt to connect appellee Mallory with any fraud is a complete failure, and there is no semblance of proof connecting appellee Duffy with any wrong doing.

### AUTHORITIES CITED.

Southall v. Griffith, 18 R., 599; Hollon v. Canter, 19 R., 1134; Creech v. Davis, &c., 21 R., 325; Kentucky Statutes, secs. 1455, 1456.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

These two appeals are election contests. They involve the same facts, and are dependent upon substantially the same evidence. They are consequently considered together. In the first case, Wilkins v. Duffy, the parties were candidates for the office of county judge of Todd county, voted for November 5, 1901. In the second case, Gill v. Mallory, the parties were candidates for the office of county attorney

of Todd county at the November, 1901, election. The appellees were the nominees of the Democratic party for the offices above named, respectively. The offices filled by that election were: Member of the General Assembly, county judge, county attorney, sheriff, jailer, superintendent of common schools, assessor, coroner, surveyor and justices of the peace and constables. There was a full ticket nominated by the Democratic party for those offices at this election. While some dissatisfacton is shown to have existed against some of the Democratic nominees, within their party, it is not claimed that those placed upon the ballot, including appellees in these cases, were not entitled to be so placed as the regular nominees of their party. The Republican party attempted to make nominations of candidates for some or all of these offices. The method adopted was by a delegate convention. After several adjournments, this convention nominated a full ticket, excepting county attorney. One Ben Miller was chairman of the convention. After its adjournment he declined and failed to certify any of the nominations. The cause assigned was that he first required each nominee to pledge himself that he would continue a candidate until the close of the election. There seems to have been some division of sentiment among the members of the Republican party as to whether nominations should have been made for the offices of sheriff and jailer. The convention first tendered the nominations for county judge and county attorney to appellants, respectively. They then declined them. After the final adjournment of the convention and after Miller had refused to certify the nominations, the chairman and secretary of the Republican county executive committee executed certificates of the nominations, and filed them with the county clerk. Several of the candidates, however, re-

signed their nominations. The candidate for county judge, sheriff and representatives were among the number. Thereupon petitions were filed before the county court clerk of the county, on August 12, 1901, signed by more than 100 names, with postoffice addresses and places of residence given, nominating candidates for these vacancies on the Republican ticket, and for the vacant place on the ticket for county attorney; appellants Wilkins (for county judge) and Gill (for county attorney) being so named.

The petitions were all of the same form, the following being one of them: "We, the undersigned, citizens of Todd county, Ky., whose postoffice addresses and residences are set opposite each of our names, hereby request and petition you to cause to be printed on the ballots to be used in the election of county officers for Todd county on the 5th day of November, 1901, in the list of names of the Republican candidates for said offices, the name of Walker Wilkins as the Republican candidate for the office of county judge of said county. Said Walker Wilkins resides near Elkton, Ky., in election precinct No. 3 in Todd county, Ky., and is a member of the Republican party, and is legally qualified to hold the office of county judge of said county. We, whose names are subscribed hereto, are legally qualified to vote for said Walker Wilkins for said office. You are requested to cause his name to be printed upon the ballot aforesaid under the title of 'Republican Party,' and under its device, to-wit, the log cabin."

A rumor reached appellants that the county court clerk, who was a candidate and the Democratic nominee for re-election at that election, would not place the names of appellants and others similarly nominated on the ballot under the name and device of the Republican party. Their representatives had several conferences with the clerk, trying

to learn his purposes in that respect, and with the view,
also, of taking compulsory process against him to so print
the ballots if he had declined.  Out of further precaution,
as appellants claim, they again filed with the clerk petitions
in the exact language of those theretofore filed, one of
which is quoted above, and signed each by more than 100
names, with postoffice addresses, etc.  These last peti-
tions were filed on October 21, 1901, the last day, under
the law, for filing petitions or certificates for nominations
for the ensuing November election.  They did not include
any of those previously signing.  On that day the clerk
assured them, through their representatives and attorneys,
that, unless he was prevented by injunction or "by law,"
he would cause the names of Wilkins, Gill and the others
of the Republican candidates, to be printed on the official
ballots under the title "Republican Party," and its device,
the log cabin; that, if he was so prevented, he would give
them timely notice.  Instead of having the ballots printed
as stated, they were printed thus:  The names of all the
nominees of the Democratic party were printed in one
column, under the title "Democratic Party," and device,
the rooster.  The Republican candidates for clerk of the
county court, jailer, assessor, superintendent of schools,
surveyor, and coroner, and two candidates for justice of the
peace, were placed under the title "Republican Party," and
the device of log cabin.  For the offices of representative,
county judge, county attorney, sheriff, and three of the can-
didates for justice, the Republican candidates' names were
printed in a separate column, headed "Independent Re-
publican Party," and under a device of a pick and shovel.
Corresponding places under the regular Republican ticket
were not filled on the ballot as prepared.  The form of the
ballot is not shown to have been known to any person in

the county prior to the morning of the day of the election, except to the clerk of the county court, W. A. Dickinson, and to appellee Mallory. No other person was claiming to be entitled to the places on the ticket as Republican candidates for these offices. There was no contest, settled or unsettled. on that account. It is claimed by appellants that they and their adherents and "workers" were completely surprised, and their discipline demoralized, by the form of the ballot; that their partisans and friends had all been instructed that their names would appear under the name and device of the Republican party, and that, to vote for them, the ballot should be marked within the circle under the log cabin; that many, of their supporters could not read, and were therefore unable to find their names on the ballot, so as to cross over and vote for it; that many of them were ignorant as to the manner of voting "crossed" or "mixed" tickets, and many of them left the voting places without voting because of this confusion, and in consequence many votes were lost to appellants and to the whole of the Republican ticket by this misarrangement of the ballot.

Other facts pertinent to the statement will be set out hereinafter, as specially bearing on particular points decided.

The circuit, court dismissed the petition of appellants, thereby adjudging the election to have been valid, and appellees to have been elected to their respective offices. The questions of law presented by these appeals are the following: (1) Were the names of appellees entitled, upon the facts stated, to go upon the official ballot under the title and device of the Republican party? (2) If they were, what effect upon the election had the action of the clerk in placing the names as was done?

The right to participate in selecting the officials who directly administer government is conferred by the Constitution upon the male citizens of the State, over 21 years of age, who have not been convicted of certain high crimes, and who are free from certain disabilities enumerated in the Constitution and statutes. But the manner of exercising this right, except that it shall be by secret ballot and at certain stated times, is regulated by statute. Thus the hours within which the election shall be held, the officers conducting same, and the manner of preparation of the ballot and of canvassing and certifying the result, are all regulated by statute. The election must be by ballot. The ballot is required by the law to be prepared and furnished by certain officials. In order that the election may be free and equal, as guarantied by the Constitution, and as is essential to the very life of a republican government, every reasonab'e opportunity is afforded to the elector to vote for the persons of his choice, free from the intermeddling or coercion of any official or other person. From the earliest times, one or more men in every community have aspired to rule the others. Over-persuasion, force, fraud and bribery are the most familiar improper means adopted to accomplish this end. To prevent and circumvent these, the ballot has been adopted as the method of voting; and in nearly all the States, as well as in many other countries where the elective system prevails, the Australian ballot is in use; that is, a ballot which must be furnished and prepared by public authority, must be so arranged as to be readily adaptable to the end that it may certainly and simply express the voters' will, and must be marked secretly by the voter. In no other way now can the citizen exercise this high privilege and duty in choosing the public officials. Consequently it is of paramount import-

ance that the officer charged by law with the preparation of this ballot should have neither right nor power to deprive the elector of his privileges. The Legislature, with this point in view, has clearly defined by statute how and by whom the ballot is to be arranged. The sections of the statute bearing on this subject recognize the fact of party affiliation, and the further fact that, to a large extent, political government is determined by party authority and policies. Therefore it is enacted that the ballot shall be arranged by giving preference to party nominations. But space must be so left on the ballot that each voter may not only choose between the nominated candidates, but may vote for any person whomsoever instead. Nominated candidates, however, are regarded as being, and in fact generally are, the ones from among whom the official is chosen. With much circumspection the statute provides how nominations may be made. First place is given to party nominations, when done under the official authority of the party, by any party casting at the last preceding general election as much as 2 per cent. of the total vote. The nominees so selected may be certified to the clerk of the county court, the official charged by law with the preparation of the ballot, by the governing party authority. If it be by primary election, the certificate of nomination to be signed and duly acknowledged by the chairman and secretary of the party making the nomination within the territory voting for the office; if by convention, then to be certified either by the chairman and secretary of the convention, or by the chairman and secretary of the county, if a county office, or of the State, if a State office. Further provision is made that, if any nominee resigns or dies, the vacancy is to be filled upon the certificate of the governing party authority of his party within the district affect-

ed, or by convention, primary election, or petition. If two or more should claim the right of a party nomination, the one recognized by the governing authorities of that party shall be given the place on the ballot reserved for the nominees of that party. If the party fail to make a nomination by primary election or convention, then it is provided: "If any political party entitled to nominate by convention shall in any case fail to do so, the names of all nominees by petition for any office who shall be designated in their petition as members of, and candidates of, such party, shall be printed under the device and title on the ballots as if nominated by a convention."

In the cases at bar the Republican party was admittedly entitled to nominate candidates for the offices in contest. It did nominate a candidate for the office of county judge by convention. His subsequent resignation of the nomination left a vacancy on the ticket of that party for that office, as if no nomination had been made. It then was permitted to that party to make a nomination for the office in one of several ways, as follows: (1) By primary election; (2) by convention; (3) by petition; (4) in this state of case, by certificate of the chairman of the county committee of that party. See section 1, c. 3, Acts Ex. Sess., 1900. The party in this instance chose to adopt the method of making the nomination by petition. The question, then, is, was that petition sufficient, in conforming to the requirements of the statute, so as to entitle the nominee so named to be placed on the ballot as the candidate of the Republican party? We must look to the statute for answer to this question, for it must be our guide. The section just cited is the one containing the law on this subject. So far as it affects the case in hand, it is, in addition to what has just been quoted, as follows: "The county clerk of each

county shall cause to be printed on the respective ballots the names of the candidates nominated by the convention or primary election of any party that cast two per cent. of the total vote of the State at the last preceding general election, as certified to the said clerk," etc., "and also the name of any candidate for any office, when petitioned to do so by electors qualified to vote for such candidates, as follows: . . . For a county officer or member of the General Assembly, one hundred petitioners. . . . The signatures of such petition need not be appended to one paper, but no petitioner shall be counted except his residence and postoffice address be designated. Such petition shall state the name and residence of each of such candidates; that he is legally qualified to hold such office; that the subscribers desire, and are legally qualified, to vote for such candidate; and shall designate a brief name or title of the party or principle which said candidates represent, together with any simple figure or device by which they shall be designated on the ballot." Do the petitions in this case meet these requirements? As stated, each petitioner signing the papers stated thereon his postoffice address and residence. The petitions stated the name of the candidate; the office for which he was nominated; that he was legally qualified to hold such office; that the subscribers desired to, and were legally qualified to, vote for such candidate; and they stated that the person nominated was a member of the Republican party; that he was nominated as the Republican candidate for the office of county judge, in one case, and county attorney, in the other, adding: "You are requested to cause his name to be printed upon the ballot aforesaid, under the title of 'Republican Party,' and under its device, to-wit, the log cabin." The petitions seem to be strictly a literal compliance with the terms of

the statute. We will take up and notice the reasons why appellees urge that the petitions were not sufficient:

First, it is argued that the nominee was designated as the "Republican candidate," instead of as the "candidate of the Republican party." Of course, it is not argued that the difference misled the clerk or any one else. But it is said there may be any number of Republican candidates, for every Republican who might be a candidate would be a "Republican candidate," whereas there could be "only one candidate of the Republican party." In our opinion, the phrases "the Republican candidate," and "the candidate of the Republican party" are synonymous terms, and are so universally employed and understood. That they were intended to be and were so understood in this case can not be doubted. Even if the grammatical construction of the sentence was incorrect, it would no more invalidate the petitions than if words therein were misspelled, provided the true intent could be gathered from it, and it substantially complied with the requirements of the statute.

The next objection is that the petitions do not state that the Republican party had failed to make a nomination by convention or primary, and, unless there was such a failure, a party nomination by petition was not allowed. Waiving for the moment the clerk's personal knowledge on this subject, the records of his office then disclosed to him officially that the Republican party had, by convention, made nominations for all county offices except county attorney; that for the office of county judge the nominee had that day resigned his nomination, and thereby there was a vacancy to be filled by petition or otherwise, as allowed by law. Furthermore, nothing in the statute regulated the time of filing the respective petitions or certificates of nomination, further than that they should not be filed for more than

Wilkins v. Duffy.  Gill v. Mallory.

sixty nor less than fifteen days before the election.  If a party nomination by petition was filed sixty days before the election, notwithstanding it stated and it was the fact that the party had not, by convention or primary election, nominated a candidate for that office, such filing of the petition could not prevent the party's making the nomination by convention or primary up to within fifteen days before the election.  When the clerk came to make up the ballot, after the time for certifying nominations was closed, if there was only one nomination of a party, and that was by petition, for a given office, the fact that no certificates of nomination were filed was sufficient to warrant him in placing on the ballot as the party nominee the person nominated by petition.  But in this case it was conclusively shown that the clerk knew, as a matter of fact, that the Republican party had made no other nomination for these offices, save as shown by the files of the clerk's office.  He knew that the convention nominated a candidate for county judge; that he had resigned his nomination; that appellant Wilkins was then nominated by petition, and appellant Gill was likewise nominated for county attorney, and they were regarded and treated as the nominees of that party for those offices; that no one else was contesting the nominations, or claiming to have been nominated by the Republican party in any manner for either of these offices.  It is claimed that the clerk was authorized, by a technical, close construction of the statute, to disregard these petitions, because of the unimportant informalities supposed to exist and already noted.  Concerning the regularity of nomination petitions, the supreme court of New York, in re Adams, 21 Misc. Rep. 396, 47 N. Y. Supp. 543, per Herrick, J., said: "The courts should not be astute to discover, or overwilling to accept the discovery by others of, technical defects

upon which such certificates of nomination can be declared
null and void and set aside, but should hold that when the
spirit and substance of the laws have been observed, that
is sufficient." This court has had occasion to review the
act of a clerk who refused to place the names of certain
candidates on the ballot because of defects in the certifi-
cate of nomination. In the case of Hollon v. Center, 102
Ky., 119, 19 R., 1134, 43 S. W., 174, Center and
others were claiming to be the nominees of the
Democratic party for the various county offices of
Wolfe county, claiming their nominations by virtue
of the action of a party primary election. The
certificates of nomination filed by the chairman and secre-
tary of the county failed to state the residence of either of
the nominees, or of the chairman or secretary, nor were
they acknowledged. By the statute they were required to
be acknowledged before some officer authorized to admin-
ister an oath, and the residences of the candidates and cer-
tifying officers must be given. The clerk refused to recog-
nize the nominations, or to place the names on the official
ballot as the nominees of the Democratic party. It was
shown "that it was in the actual and personal knowledge
of appellant [the clerk] that appellees had been nominat-
ed at the primary election, duly held, as candidates for
the several offices mentioned in the various certificates filed
with him, and, moreover, that he did not refuse to put their
names on the ballots because he was unaware of their reg-
ular nomination, but upon the sole ground the certificates
did not conform to the formal requirements of the statutes."
This court held, in an opinion by Judge Lewis, that as there
was no other person claiming the places on that ticket, and
as the regular party authorities did not question the nomi-
nations purporting to be made for their party, the clerk

should have placed their names on the ballots; and the writ of mandamus to that end was allowed to go.

It is further argued for appellees that the petitions of nomination failed to state that the petitioners were themselves members of the Republican party. It is not claimed that in fact they were not. On the contrary, it is conclusively proven in this record that they were,—at least, that more than the statutory requirement of 100 were. It would seem to be a sufficient answer to this argument to say that the statute does not require the petitioners to state that they are members of the party; it does require them to say that the candidate is a member of the party for which he is being nominated, and that the petitioners are qualified and desire to vote for him for that office. Argument is made that if it were permissible for those not members of a party to nominate a candidate for it by petition, the opponents of a political party may name both tickets. Not so. For a party can by its governing authority easily and effectually prevent this by making nominations by primary election or convention. But even were the danger as suggested, it is a matter of legislative oversight, which the courts are powerless to remedy, however desiring. This objection is based, it is said, upon the decision of this court in Southall v. Griffith, 100 Ky., 91 (18 R., 599), 37 S. W., 577. As that case is much relied on by appellees, we deem it proper to carefully notice it. In that case Southall brought his action for a writ of mandamus against Griffith, clerk of the county court, to cause to be printed on the ballot Southall's name as a candidate for Congress in the Second district of this State, under the device of the People's party (being a plow and hammer), and under the name or title of that party ticket. The circuit court disallowed the writ, which was affirmed upon appeal. Southall failed to

show affirmatively to the court that he was entitled to go upon the ballot as the nominee of the People's party, for he did not state, nor was it shown, that the People's party had failed to nominate by convention or primary election a candidate for Congress for the Second district, to be voted for at that election; nor did it appear that Southall was himself a member of the People's party, nor that any of his petitioners were. It is a familiar rule of pleading that one applying for the writ of mandamus must show affirmatively the facts entitling him to have it issued, and that his pleadings will be most strongly construed against him. We can not infer that the court intended to add to the statute any requirement not provided by the Legislature. What the court evidently intended to decide, and what we hold that the court in that case did decide, was that if the clerk failed and refused to place upon the ballot the name of one claiming to be the nominee of a party, before a court would interfere to issue its writ of mandamus to compel the clerk to place the name upon the ballot as the nominee of that party all the facts must be shown affirmatively that would entitle the party complaining to the relief sought, and that an absence of such material allegation in the petition filed in the circuit court for the writ of mandamus would be a sufficient reason for withholding the writ. To hold otherwise would be to say that the clerk has a judicial discretion in such matters; that a duty would devolve upon him (at least, the privilege would) to inquire into the party affiliation of each of the signers of the petition, and not only to inquire into them, but to determine them and adjudge them, and not only that, but to inquire into and determine the fact of the signers' places of residence, of their legal qualifications to vote, of the fact of the candidate's qualification to hold the office for which he is attempting

to be nominated, and of the fact of his party affiliation.
It would be furthermore to hold that this subordinate execu-
tive officer was clothed with judicial functions and jurisdic-
tion, and he might determine these matters within his own
mind, settling them within his own bosom, as no provi-
sion is made for a record of his conclusions of the particu-
lar facts.  He can not swear witnesses, nor coerce their
attendance.  The statute provides no appeal from his deci-
sion, if he should be said to be entitled to make such de-
cision   There would be no end of confusion and no limit
to the opportunities for fraud and mischief upon the part
of this class of officials.  Such a jurisdiction is nowhere
warranted by either the laws or the spirit of the laws of
this Commonwealth.  We must conclude that the Legisla-
ture never contemplated conferring upon this subordinate
executive official such extraordinary power and authority
over a matter of such vast moment to the people of the
State.  His duties are clearly defined by the statute, and
are mandatory in their nature.  When a petition, with the
requisite number of names signed to it, giving the postof-
fice addresses and residences of the signers, stating in sub-
stance so that it may be fairly gathered that the terms of
the statute were complied with as to the name and party
affiliation of the proposed candidate, the office to which he
is nominated, and the party title and device selected by
the petitioners, is filed within the statutory time, it then
becomes the duty of the clerk to place the name of such
candidate upon the official ballot as the nominee of such
party, unless there shall be filed within the statutory period
of allowance a certificate of nomination for the same office
by the same political party, either by convention or primary
election, or unless a previous nomination by petition for
the same party and same office has been filed, or, in case

of a vacancy by death or resignation or removal, or a previously nominated candidate, by the certificate of nomination by the county chairman of that party.

We are of opinion that appellants were entitled to have had their names printed upon the official ballots for the election to be held in Todd county in November, 1901, as the candidates of the Republican party for the offices, respectively, of county judge and county attorney.

The next inquiry is, What is the effect of the failure of the clerk to place appellants' names on the ballot under the title and device of the Republican party, under the circumstances named? It is not every error, trivial or even serious, that will invalidate an election. Nor, indeed, will the fraud of the officers in charge of the election, or of other persons, necessarily void it. As is well said in McCrary, Elect. (4th Ed.), pp. 522, 523, sec. 724: "The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and, on the other, of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute, where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with, at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do." But as said in re Kneass, 2 Pars. Eq. Cas., 590: "The true

policy, to maintain and perpetuate the vote by ballot, is found in jealously guarding its purity; in placing no fine-drawn metaphysical obstructions in the way of testing election returns, charged as false and fraudulent; and in insuring to the people, by a jealous, vigilant, and determined investigation of election frauds, that there is a saving spirit in the public tribunals charged with such investigations, ready to do them justice if their suffrages have been tampered with by fraud, or misapprehended through error." It may be stated as the general rule that the misconduct of election officers, or irregularities on their part, will not vitiate an election, unless it appears that the result was thereby affected. 10 Am. & Eng. Enc. Law, 670; McCrary, Elect., 574; Creech v. Davis (21 R., 325), 51 S. W., 428. This general rule is expressly applied in this State by statutory enactment. A part of section 12, c. 5, Laws Ex. Sess., 1900, is as follows· "In case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal to the court of appeals, may adjulge that there has been no election. In such event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify." It becomes important, in view of the foregoing, to determine whether the action of the county court clerk was fraudulent. It is claimed, as has been stated, that he relied upon the instructions of the then attorney general of the State in the interpretation of Southall v. Griffith, 100 Ky., 91, 18 R., 599, 37 S. W., 577. That the opinion was susceptible of such construction by the clerk seems to be evident enough. This

fact, coupled with the instructions of the attorney general, would seem to indicate that the clerk did not act from a corrupt or fraudulent motive; and therefore, under the statute above quoted, we can not hold that the election was void.  But for the opinion above, and the doubts attending its proper construction, the other facts in the record would have been sufficient to have justified a contrary conclusion. However, the official is entitled to the benefit of the presumption that he acted honestly, and with the intent to discharge his duties within the intent of the law.  That the omission of the names of appellants from the ballot did affect the result of the election is a matter that seems to be susceptible of reasonably clear demonstration.  But this is not enough.  It must also be made to appear that the cause of this result was "a fraud, intimidation, bribery or violence in the conduct of the election," in the language of the statute.

Failing to find sufficent evidence of the latter conditions, the judgments of the lower court must be affirmed.

The whole court sitting.

Judge Paynter concurs in the conclusion of the court, but does not agree to all the reasoning of the court.

Chief Justice Guffy's dissenting opinion:

The majority opinion holds that the clerk of the Todd county court should have placed the names of appellants under the Republican party device, to-wit, the log cabin, but also refuses to adjudge the election invalid, or, in other words, to afford any relief to the appellant.  It seems to me that the doctrine announced in the opinion places it in the power of each county clerk to defeat any candidate that he desires to defeat, simply by failing or refusing to place his name under the party device of the party that

nominated him, and thus leave the defeated candidate without remedy. The only remedy it seems possible to give in such a case would be to declare the election invalid, and give the defeated candidates another opportunity to appeal to the people. It is evident from the testimony in this case that the clerk purposely misled the appellants, and induced them to believe that their names would be placed under the log cabin. It is clear to my mind that they ought to have been so placed. The opinion of the court so holds. It is also reasonably certain that if the names of the appellants had been placed under the log cabin, as they should have been, they would have been elected to the offices for which they were candidates. It therefore follows that they were defeated by the illegal and fraudulent acts of the county clerk, who alone had control of the matter. It is of no legal importance whether the successful candidates were a party to or procured this illegal action of the clerk. The injury is the same to the appellants. The court ought to have adjudged the election void, and directed the court below to award a new election. Such a judgment was the only relief that could be afforded, and is the only remedy for such wrongs. Any other rule of construction places the candidates of any party at the mercy of the county clerk. He may defeat any county or district candidate at his will, by failing to place his name under his party device. The question involved herein is of such vast importance to fair elections, to the rights of the people, and to candidates as well, that I felt it my duty to file this respectful but earnest dissent from the majority opinion in this case.