PEOPLE ex rel. KLINKER v. BOARD OF POLICE COM'RS.

PEOPLE ex rel. KEMPNER v. SAME.

(Supreme Court, Special Term, New York County.  October 30, 1893.)

At chambers.  Application for writs of mandamus to compel defendant to receive certificates of nomination.  Denied.

BARRETT, J.  The point here involved seems, at first flush, to be a small one.  But when the effect of a ruling one way or the other is considered, it becomes apparent that the question is quite important.  It is, for instance, important that citizens should be facilitated in the exercise of their right to present independent candidates, and that they should not be obstructed by too narrow or technical an interpretation of the statute.  Upon the other hand, it is equally important that expenditures of public moneys should be kept within legal bounds, and that taxpayers should not be burdened with the expense of printing ballots for candidacies which are without substance or genuine support.  Checks are placed upon mere frivolous candidacies by the provisions of the statute with regard to the number of voters who are required to set the machinery of independent nominations in motion.  The requirements of the statute on this head should be strictly complied with, else the checks upon idle or unsubstantial candidacies at once break down.  The language of the statute, as bearing upon the present question, is that "the nominations shall be made by a certificate signed and acknowledged by such voters, each of whom shall add to his signature his place of residence, and make oath that he is such voter, and has truly stated such residence."  Laws 1892, c. 680, § 57.  The sole safeguard here is plainly the oath.  It would be easy enough to procure signatures to a certificate without an oath, and thus to evade the statute.  The difficulty would be in inducing a large number of people to commit perjury.  Clearly, therefore, the oath should be rigidly demanded, both in form and substance, for there should be no possible question as to its adequacy to punish the nominator in case his statements as to residence and voting right are untrue.  The oath here exacted is not such as is required to effect registration or upon a challenge when the vote is offered.  There the oath is like that administered to a witness in open court.  The officers who execute the law are present, and the rights flowing from the oath immediately follow.  Such an oath need not, and, in the nature of things, cannot, be in writing; nor need the affiant's statement be formally recorded.  It is entirely different, however, where the oath is taken for the very purpose of making a record, and especially where it is taken before an officer who has no relation, directly or indirectly, to the election machinery.  In the latter case the oath, to have any value towards effectuating the statutory safeguard, must necessarily be in writing, and be signed by the nominator.  If, as Mr. Fennel, in his able argument, contends, it was not contemplated that the oath should be filed, then the proposed safeguards against fraudulent nominations are wholly nugatory; for how, under such circumstances, could any one giving a false residence be punished for perjury?  The oath would be, so to speak, in the air, or, at all events, in the possible recollection of the notary.  Even if the notary's certificate to the effect that the oath was taken were deemed sufficient, the same result would practically follow.  The statutory safeguard should not depend for its efficiency upon a notary's recollection, nor upon his ability to identify hundreds of people, much less upon the mere presumption in favor of his performance of duty.  As was said by the chancellor in Hathaway v. Scott, 11 Paige, 173: "To identify the individual making the oath, he is required to sign the paper to which he swears, so as to facilitate a prosecution for perjury if the oath is false; * * * for without such signature it would be very difficult, if not impossible, to sustain a prosecution for perjury."  The old cases hold that a technical or formal subscription is not essential, provided that the affiant's name is at the head of the affidavit.  Haff v. Spicer, 3 Caines, 190; Jackson v. Virgil, 3 Johns. 540; Millius v. Shafer, 3 Denio, 60; Soule v. Chase, 1

Rob. (N. Y.) 222; Hitsman v. Garrard, 16 N. J. Law, 124. In other words, it is only necessary that the affiant should identify and bind himself by writing his name somewhere in or on the affidavit. The cases on this head need not, however, be specially analyzed, as it is not claimed that the oath here was sufficient, if the statute contemplates an affidavit or its equivalent. The claim is that the oath here required is like that of a witness who proves the execution of a deed, and the notarial certificate like that there provided for. But in the case of a deed the certificate of proof is expressly authorized. The language of the Revised Statutes is that the officer shall indorse upon the conveyance a certificate signed by himself, and in such certificate set forth "the names of the witnesses examined before such officer, and their places of residence, and the substance of the evidence given by them." (4 Rev. St., 8th Ed., p. 2472, § 15.) Here there is no such provision, and the very fact that a special enactment was deemed essential in the one case militates against the claim that, without it, the same thing was intended in the other. If the signature to the oath was a cumbersome or even inconvenient proceeding, tending, as counsel suggests, to confuse or interfere with the elective franchise, there might be some support for the contention that the legislature could not have intended to require it. But the reverse is the fact. There can be no possible inconvenience in signing the oath any more than in signing the certificate of nomination. The two acts can be simultaneously performed. Surely two signatures can be made as conveniently as one. This requirement is not technical, but substantial. It is essential to secure honesty and good faith in the making of independent nominations, and to prevent fraudulent candidacies, with their attendant burdens. In the present cases, I have no doubt of the good faith of the applicants, and I would gladly aid them to secure the benefits of the act were it possible to do so without laying down a rule which would be far-reaching in its evil effects, and which could not be laid down without disregarding the plain intention of the legislature. My conclusion, then, is that the nominators' oaths must be filed with their certificates, and that such oaths must conform to the ordinary rules which govern with regard to the due verification of written statements of fact. It follows that the board of police commissioners properly performed their duty in rejecting the certificates in question, and that the motions for a peremptory mandamus should be denied. As the good faith of the applicants is undoubted, and as the question is a new one, the denial should be without costs.