# SUPREME COURT

OF THE

## STATE OF COLORADO.

## September Term, 1906.

[No. 6117.]

COWIE, SECRETARY OF STATE, v. MEANS ET AL.

1. Judges—Elections—Candidate for Re-election—Disqualified to Act.

The secretary of state refused to accept and file two alleged certificates of nomination to fill vacancies for representatives upon a certain ticket, such certificates being made by persons assuming to act as a committee to fill vacancies upon such ticket, and an order was issued by the district court commanding him to either accept and file such certificates or show cause why he did not do so. Held, that it was error for the judge of such court, who had been nominated for re-election upon the same ticket, to refuse to grant a change of venue in such proceeding on the ground that he was disqualified by interest from sitting in the case.—P. 4.

2. Elections—Contests—Certificate of Nomination—Sufficiency.

Section 6, p. 144, Sess. Laws 1891, provides that a certificate of nomination containing the names of the candidates shall be signed by voters residing within the district for which the officers are to be elected, and that each signer shall add to his sig-

nature his place of residence, and shall make oath that he is a voter in such district and has truly stated his residence. Held, that such voter must not only sign the certificate, but must also sign the oath, and that a failure so to do invalidates the certificate.—P. 9.

**3.  Same—Appointment of Committee to Fill Vacancies.**

Where the original certificate of nomination, under § 6, p. 144, Sess. Laws 1891, is void because the oath was not signed by the voters, that portion of it assuming to appoint a committee to fill vacancies is likewise void, and such alleged committee has no power to act.—P. 9.

**4.  Same—Filing of Certificate—Time and Place.**

Certain alleged certificates of nomination to fill vacancies were handed for filing to the secretary of state, on board a train bound for another city, at the union depot in Denver, at 7 p. m. October 27, preceding the general election to be held on November 6. Held, that such action did not constitute a legal filing of such certificates, as of that date, it being necessary to tender such certificates for filing at the office of the secretary of state to some person in charge during business hours, and at a time not less than eight days before election.—P. 10.

**5.  Same—Manner of Computing Time.**

Section 1, c. 7, Sess. Laws 1894, provides that a certificate of nomination to fill vacancies, upon being filed at least eight days before election, shall have the same force and effect as the original certificate; and further provides that the secretary of state shall not be required to make any certificates of new nominations for vacancies after eight days before election, exclusive of election day. Held, that—applying the rule that a section must be so construed that the whole of it may stand, and, if there is any doubt as to the meaning of one phrase, that phrase must be given such a reasonable construction as will enable it to be harmonized with other provisions of the same section—such certificate must be presented for filing at the office of the secretary of state to some person in charge thereof during business hours, and on a day not later than the second Saturday before election day held on Tuesday.—P. 13.

*Petition for Review of the Proceedings in the District Court of the City and County of Denver.*

*Hon. John I. Mullins and Hon. P. L. Palmer, Judges.*

Petition for review of the proceedings in the district court of the city and county of Denver by James

Cowie, as secretary of state, in which Rice W. Means, Emerson J. Short and James A. Harris, as the committee to fill vacancies upon the Lindsey ticket for representatives, and W. G. Houston, A. J. Pugh, William E. Shields, Harold L. Morris, Thomas M. Lyons, Meyer Hirsch and Walter C. Stickney, as candidates on said ticket, are made respondents.

Petition allowed and proceedings reversed.

*Judgments reversed.*

Decision *en banc*. CHIEF JUSTICE GABBERT not sitting, and Mr. JUSTICE GUNTER and Mr. JUSTICE STEELE dissenting.

Mr. HENRY J. HERSEY, Mr. THOMAS WARD, Jr., and Mr. I. B. MELVILLE, for petitioner.

Mr. BEN B. LINDSEY, Mr. EMERSON J. SHORT, and Mr. JOHN T. BOTTOM, for respondents.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This is a proceeding under the election law commonly known as the Australian Ballot Act, for a review of the proceedings and decision in the district court of the city and county of Denver, wherein such court reviewed the action of the petitioner, the secretary of state, in refusing to accept and file two alleged certificates of nomination to fill certain alleged vacancies in nominations made by respondents, assuming to act as a committee to fill such vacancies, the original nominations purporting to have been made by individual electors for candidates for representatives to the general assembly upon the so-called Lindsey ticket. The district court ordered the secretary of state to accept the certificates to fill vacancies and to file the same, and "to forthwith certify said nominations to the county clerks and recorders of said counties composing the said districts respec-

tively, since it appears that the time allowed by statute for objecting to said certificates of nomination has long passed, and no other objections can lawfully be made thereto.''

Another division of the district court assumed jurisdiction of the same matter in another proceeding and made an order in direct opposition to the one heretofore mentioned. Consequently, both parties requested this court to assume jurisdiction. The facts out of which the controversy arose, and the questions of law involved, will appear in their proper order in this opinion.

1. The judge of the district court who reviewed the action of the secretary of state was a candidate for election upon the Lindsey ticket. The parties whose nominations were involved in the proceeding claim to be candidates upon the Lindsey ticket. Upon the service of the notice to the secretary of state requesting him to either accept and file these certificates, or to show cause why he did not do so, he appeared before the judge of the district court and filed a petition for a change of venue, on the ground that the judge was disqualified, by reason of his interest, to hear and determine the matter; this contention being based upon the fact that the judge was a candidate for re-election upon the Lindsey ticket. This motion was overruled, and in this the court erred. The judge being a candidate upon the same ticket, was presumably interested in the success or failure of that ticket at the polls. If that ticket went before the people half made up, it would not command the respect nor secure the support which a complete ticket would command or secure. That which would tend to weaken the entire ticket would be detrimental to the interests of each candidate upon it, consequently the interests of the trial judge in the result of the litigation was apparent, and to none more than to

the judge himself. The error in this instance is the more flagrant because, in two cases, we have determined that, under similar circumstances, a trial judge was disqualified to act.—*Phillips v. Curley,* 28 Colo. 34; *McMillan v. Spencer,* 28 Colo. 80.

2. It is contended that respondents Means, Short and Harris were not a committee duly or legally appointed to fill vacancies on the Lindsey ticket. It appears that the original certificate of nomination was one attempted to be made by electors otherwise than in convention assembled. The statute provides:

"A certificate of nomination containing the names of the candidates for the offices to be filled * * * shall be signed by voters residing within the district or political division in and for which the officer or officers are to be elected * * * each voter signing a certificate shall add to his signature his place of residence and shall, before an officer duly authorized to take acknowledgments, acknowledge his signature and make oath that he is a voter within and for the political division for which such nomination is made, and has truly stated his residence."—Section 6, Session Laws 1891, pp. 144, 145.

It appears that the signers of the original certificate of nomination failed and neglected to sign the oath required by this statute. They signed the certificate of nomination. The officer recited in his certificate that they made affidavit as required by law. The petitioner contends that this is insufficient; that the affidavit should be signed by the voter, as well as the certificate of nomination. Respondents contend that the certificate of the notary public that the voters have made the affidavit, is sufficient. It is further contended by respondents that, inasmuch as the original certificate had never been objected to because of this alleged informality, the question

could not now be raised. It is apparent that, if the so-called committee was not duly appointed and authorized to act, the secretary of state would not have been justified in receiving and accepting a certificate to fill vacancies made by it, for the reason that, if an instrument attempting to create a power is fatally defective, no power is granted. An agent or attorney in fact, the appointment of whom must be made in a particular manner, is without authority to act as such agent or attorney if the act by which it was attempted to create such appointment is void. A power cannot be created unless the generative force has vitality.

*State v. Hayes* (Montana), 78 Pac. 486, is somewhat in point upon this proposition. That matter was in response to nominations by a committee where the convention assuming to appoint them was without power to nominate under certain conditions. The court said: "If the convention could not make nominations, it certainly could not delegate to a committee authority it did not possess." So in this matter; if the original certificate of nomination lacked vitality because of the failure of the nominors to make and sign the oath, it could not delegate to the committee the power to fill the vacancies. So far as we have been able to learn, the precise question here involved has not been adjudicated except in New York. In two of the New York cases, it appears that there was a notary's certificate exactly the same as the notary's certificate on the nominations in controversy. In the case of *The People ex rel. Oliver v. Board of Police Comrs.*, 31 N. Y. Supp. 467, it is said:

"In each instance the voter has signed the certificate, added his place of residence, and acknowledged it before a notary, but has omitted to sign the oath required by the statute. In other words, the

voter has signed the paper once, whereas he should have signed it twice, *i. e.*, once to the certificate of nomination, and once to the oath. (See *People ex rel. Klinker v. Board of Police Comrs.*, 31 N. Y. Supp. 469.) The facts here presented are precisely the same as those presented before Mr. Justice Barrett in the *Klinker case.* * * * The rule there laid down is a wise and a wholesome one, and should be strictly enforced. The oath of the nominor, as evidenced by his signature thereto, is a safeguard against fraud and imposition. Although there is no intimation of fraud in the case under consideration, and I am satisfied of the good faith of the applicant, and that the absence of signatures to the oath is clearly due to inadvertence and want of proper care in the preparation of the certificates, still I am of opinion that the board of police commissioners were warranted in rejecting the certificates, for the reason that they are not in apparent conformity with the provisions of the statute.''

In the *Klinker case,* it is said:

''The language of the statute, as bearing upon the present question, is, that 'the nominations shall be made by a certificate signed and acknowledged by such voters, each of whom shall add to his signature his place of residence and make oath that he is such voter, and has truly stated such residence.' * * * The sole safeguard here is plainly the oath. It would be easy enough to procure signatures to a certificate without an oath, and thus to evade the statute. The difficulty would be in inducing a large number of people to commit perjury. Clearly, therefore, the oath should be rigidly demanded, both in form and substance, for there should be no possible question as to its adequacy to punish the nominator in case his statements as to residence and voting right are untrue. * * * If it was not contemplated that the

oath should be filed, then the proposed safeguards against fraudulent nominations are wholly nugatory; for how, under such circumstances, could any one giving a false residence be punished for perjury? The oath would be, so to speak, in the air, or, at all events, in the possible recollection of the notary. Even if the notary's certificate to the effect that the oath was taken were deemed sufficient, the same result would practically follow. The statutory safegard should not depend for its efficiency upon a notary's recollection, nor upon his ability to identify hundreds of people, much less upon the mere presumption in favor of his performance of duty. As was said by the chancellor in *Hathaway v. Scott,* 11 Paige 173: 'To identify the individual making the oath, he is required to sign the paper to which he swears, so as to facilitate a prosecution for perjury if the oath is false; * * * for, without such signature, it would be very difficult, if not impossible, to sustain a prosecution for perjury.' * * * My conclusion, then, is, that the nominors' oaths must be filed with their certificates, and that such oaths must conform to the ordinary rules which govern with regard to the due verification of written statements of fact. It follows that the board of police commissioners properly performed their duty in rejecting the certificates in question.''

In the case of *In re McParlin,* 47 N. Y. Supp. 543, it was said, after quoting the statute which provides that the elector shall add to his signature his place of residence and make oath that he is an elector:

''The requirements set forth in that portion of the section that I have quoted are matters of substance. Each requirement is obviously to be a check upon the making of false or fraudulent certificates, and to enable any one inspecting a certificate to dis-

cover the residence of the subscriber.   *   *   *   The oath required is a matter of substance, as affording *prima facie* proof that the persons so subscribing the certificate did, in fact, subscribe the certificate, and are, in fact, electors of the state. These requirements are essential."

After examining several of the certificates by which it was attempted to nominate Charles F. Adams for chief justice of the court of appeals and the nomination of Lawrence F. McParlin to fill the vacancy caused by the declination of Adams, the court says:

"Having arrived at the conclusion that the certificate of nomination of Mr. Adams for chief judge was insufficient, it follows that the committee named in such certificate to fill any vacancy was not legally designated, and, therefore, it had no power to place Mr. McParlin in nomination in place of Mr. Adams, who, it appears, has declined."

So, following these New York cases, we hold that, in certificates of nomination made by electors, the electors are required not only to sign the certificate, but to sign the oath as well, and that, having failed in this case to sign the oath, there is lacking a substantial compliance with the terms of the statute and the certificate was void. The certificate making the original nominations being void, that portion of it which assumed to appoint a committee to fill vacancies is likewise void, and they had no power to act. Consequently, the secretary of state was justified in rejecting the certificate.

3. Finding, as we do, that the court erred in making his order compelling the secretary of state to accept this certificate, we might well rest here; but there are involved in this controversy certain other questions which should be determined, because they arise preceding each election. It appears that, on

Saturday evening, October 27, 1906, James A. Harris, one of the persons claiming to constitute a committee to fill vacancies on the Lindsey ticket, found the secretary of state on a railway train at the Union Depot in Denver, and handed to him the two alleged certificates of nomination to fill the vacancies on the Lindsey ticket. The secretary of state stated that he could not file the certificates at that place, but that he would take them, look them over, and let the committee know later what he proposed to do. Upon the following Monday he returned the certificates, having declined to receive or file them, because they were not tendered for filing in his office in apt time. The first question on this phase of the case is: What constitutes a legal tender of a document for filing as a public record? It is contended by respondents that handing the certificate to the secretary of state as he was boarding the train at the Union Station for Boulder at 7 o'clock in the evening was a legal filing of such certificate as of that date. We cannot agree to this proposition. The object of filing the certificate with the secretary of state is to give the public notice, and no notice could be given to the public by placing it in the pocket of the secretary of state upon the train at the Union Depot, or elsewhere. If the mere handing of a public document to the proper officer is a filing of the same, regardless of the location of such officer at the time of the filing, the public might be deprived of receiving any sufficient notice of such filing. For instance, the statute requires that protests to such nominations, if made, shall be filed within three days after filing the certificate. If the certificate could be handed to the secretary of state upon the streets of Denver or upon the cars, and such placing of it in his possession be deemed a sufficient filing, then it could be placed in his possession in the uttermost part of Routt county or Montezuma coun-

ty, from which places it might be found extremely difficult to place the document in the office of the secretary of state where it could be open to the inspection of the public within the three days in which the protest could be filed. Again, if placing the document in the hands of the secretary of state out of his office would constitute a filing of the same, so it would if it was placed in the hands of either of his deputies, and, in that case, we might be confronted with the peculiar situation of the secretary of state and one or more of his deputies each receiving, in different parts of the state, certificates of nomination of different candidates, for the same office, upon the same ticket, and the three days in which the right to make protest would elapse before either of such certificates found lodgment in the proper office. Such a practice would lead to unutterable confusion, and open the door to fraud and corruption.

In order to constitute a legal filing of a paper, three things are necessary: First, that it be placed in the hands of the proper custodian; Second, at a proper time; and, Third, in a proper place. So, to constitute a legal filing of a certificate to fill vacancies upon a state or district ticket already nominated, it is necessary to tender the same for filing at the office of the secretary of state, to some person in charge thereof, during business hours and at a time not less than eight days prior to election. Among the authorities by which we arrive at the above conclusion are: *Garlick v. Sangster,* 9 Bing. 45; *Naylor v. Moody,* 2 Blackford 247; *Reed v. Inhab. of Acton,* 120 Mass. 130; *Gates v. State,* 128 N. Y. 221; *Bishop v. Cook,* 13 Barb. 326; *Bettison v. Budd,* 21 Ark. 578; *Pfirmann v. Henkle,* 1 Ill. App. 145; *Gorham v. Summers,* 25 Minn. 81.

4. When does the time for filing certificates of nominations to fill vacancies expire? The statute

provides that such certificates shall, upon being filed at least eight days before election, have the same force and effect as the original certificates.—Section 1, Sess. Laws 1894, p. 59.

It is contended by respondents that, notwithstanding the fact that the certificate of nomination did not reach the office of the secretary of state until Monday of the week preceding election, it was then tendered in apt time; while petitioner contends that it should be tendered at the office during business hours of the second Saturday before election. The books are filled with cases concerning the rule to be adopted in the computation of time, and many nice distinctions are drawn as to whether the time should be so computed as to leave a given number of clear days between the happening of two events, or as to whether the first and the last day shall be excluded, or the first, or the last. As we view the matter, in this case it is unnecessary to indulge in the niceties of logical reasoning as to the proper construction to be given the phraseology of a clause or sentence which provides for the computation of time, because in the statute before us we must be mindful of the rule that the section must be so construed that the whole of it may stand, and, if there is any doubt as to the meaning of one phrase, that phrase must be given such a reasonable construction as will enable it to be harmonized with other provisions of the same section.

Running through the great majority of the cases in relation to the computation of time, we find this doctrine, either directly expressed or indirectly acquiesced in, namely, that it is the desire of courts to carry out the intention of the legislature and the parties, and that this intention is to be gathered not only from the language used in the provision under consideration, but from the context as well, and when-

ever it is apparent that only the clear days are meant, this intention will be carried out, regardless of the particular language used in the clause.—*Lefavour v. Bartlett,* 42 N. H. 555; *Johnson v. Douglass,* 73 Mo. 168; *Willey v. Laraway,* 64 Vt. 566; *Garner v. Johnson,* 28 Ala. 494; *Hicks v. Natl. Ins. Co.,* 60 Fed. 690; *Conway v. Smith Merc. Co.,* 6 Wyo. 468; *Coquard v. Boehmer,* 81 Mich. 445; *Steuart v. Meyer,* 54 Md. 454; *Ward v. Walter,* 63 Wis. 39; *O'Connor v. Towns,* 1 Tex. 107; *Blackman v. Nearing,* 43 Conn. 56.

The statute, section 1, Sess. Laws of 1894, p. 59, provides, first, "That the certificate to fill vacancies shall be filed at least eight days before the election." Standing alone there might be some question as to what was meant or intended by the legislature in the use of the words "at least eight days before election," as to whether or not there should be eight clear days, or whether the eighth day should be included in the count. If the latter had been intended, it could easily have been expressed by saying that the certificate should be filed not later than the eighth day before election. It is evident, however, that they did not intend that, because the last sentence of the section provides: "The secretary of state shall not be required to make any certificates of new nominations for vacancies after eight days before election day, exclusive of election day." It is the duty of the secretary of state to certify to the various county clerks the list of nominations which have been made. This provision says that he shall not be required to do this after eight days before the election. Monday is the eighth day before election, so that, under this last clause, the last day which he could be required to make these certificates would be upon Monday. If the committee to fill vacancies would have the right to file their certificates of nomination upon the eighth day before election, the secretary of state could not

make the certificate of such vacancies until the seventh day before election, which would be one day later than the law requires him to make such certificates. Consequently, it is apparent that the legislature intended that the certificates to fill vacancies should be filed with the secretary of state previous to the eighth day before election, and not upon that day. Another construction would abrogate the last sentence of the section, or would result in the filing of the certificate to fill vacancies upon the eighth day before election either being effectual or ineffectual, according to the caprice of the secretary of state. While the statute does not provide that he may not certify the list of nominations or changes in the nominations after eight days before election, it says that he shall not be required to do so. He is required to do it before that time. If we should adopt the construction contended for by respondents, we would place it in the power of the secretary of state to certify such alteration in the list of nominations or not to do so, according to his inclination. This could not have been intended by the legislature. We therefore conclude that the certificate of nominations to fill vacancies shall be presented for filing at the office of the secretary of state, and to some proper person in charge thereof during business hours upon the second Saturday before election, or some time previous thereto.

From the supplemental petition of the petitioner it appears that, immediately upon the order being made by that division of the district court presided over by Judge Mullins, wherein petitioner was commanded to accept the certificates of nominations to fill vacancies tendered by respondents and to hear no objections or exceptions thereto, another division of the district court presided over by Judge Palmer, issued an order compelling the secretary of state to

hear certain objections to such certificates, made by Fred W. Parks. Inasmuch as the decision of that branch of the district court presided over by Judge Mullins must be reversed and the action of the secretary of state in refusing to receive for filing certificates of nominations sustained, there remains nothing upon which the objections of Mr. Parks can be based, for which reasons the judgments of both divisions of the district court will be reversed.

*Reversed.*

Decision *en banc,* CHIEF JUSTICE GABBERT not sitting.

Mr. JUSTICE GUNTER and Mr. JUSTICE STEELE dissent.