No. 11,678.

STEPHEN, CHAIRMAN OF THE REPUBLICAN PARTY CENTRAL
COMMITTEE, ET AL. *v.* LAIL, ET AL.

Decided August 31, 1926.

Action to enjoin election commission from putting certain names on the primary election ballot. Judgment for defendants.

## *Reversed.*

1.  ELECTIONS—*Nomination by Petition—Signers.* Petitions for nomination of candidates held insufficient under existing statutes, where the affidavit attached to each, although sworn to, was not signed by the signers of the petition.

2.  OFFICERS AND OFFICES—*Statutes—Precedent.* An administrative construction to be cogent, should be uniform.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. GEORGE A. CROWDER, Mr. GRANBY HILLYER, Mr. HENRY J. HERSEY, for plaintiffs in error.

Mr. J. W. KELLEY, for defendants in error.

*En banc.*

MR. JUSTICE BURKE sitting as Chief Justice.

MR. JUSTICE DENISON delivered the opinion of the court.

THE district court granted and dissolved a temporary injunction against the defendants in error, forbidding the election commission of the City and County of Denver to put the names of certain candidates upon the pri-

mary ballot of the Republican party at the coming election, and dismissed the bill. The plaintiffs below bring error and we are required by the statute to determine the matter summarily. C. L. § 7574. The judgment must be reversed.

The defendants except Lail, Sopris and Davidson, members of the election commission, are candidates for committee men and committee women of the Republican party, by petition. The ground for excluding their names from the ballot is that ninety-seven of the petitions were insufficient because the affidavit attached to each, although sworn to, was not signed by the signers of the petition. The reason is good. . We are controlled by *Cowie v. Means,* 39 Colo. 1, 88 Pac. 485, where it is held that the failure of the petitioners to sign the oath required by the statute there under consideration rendered the whole proceeding void. That decision, which was rendered in 1906, must have been known to the legislature when they enacted the statute now under consideration, and they might have so drawn it as to avoid the force of that decision, yet they fitted the law which they were enacting more accurately to it than the law which was considered in the decision itself; moreover the nine other legislatures which have met since the decision have left it untouched. Against conditions like this the argument of executive, administrative or popular construction, which we are asked to consider, is of little weight. Neither do we think that the Attorney General is shown to have construed the statute so as to permit the omission of the signature to the oath. The forms which he prepared which are relied on to show his construction indicate that he expected the affidavits to be signed and some of them are signed. An administrative construction, to be cogent, should be uniform.

The statute under consideration in *Cowie v. Means* provided that the voter signing the petition should "make oath that he is a voter, etc. * * *" C. L. § 7583. The present statute provides that the electors supporting

the petition "shall make oath by affidavit thereto attached, etc.   *   *   *" C. L. § 7536.   Even though it were held that these latter words require a signature to the affidavit it might still be held that the words "make oath." do not, but when it is held that the words "make oath" do so require, a fortiori do the words "make oath by affidavit attached thereto."

Before a situation like that here shown the arguments ab inconvenienti and for expediency cannot avail, and, since the case cited holds that because of failure to sign the oaths all the proceedings are void, we cannot escape the necessity of a permanent injunction without overruling that case, which we are unwilling to do.   We are fortified in this conclusion by the fact that in a recent unreported case, *Robinson v. People,* No. 11,318, wherein this same question was raised, this court upheld the petitions which bore signatures to the oath, but not those which lacked them.

The judgment is reversed with directions to grant a permanent injunction as prayed as to the ninety-nine petitions concerning which defect was conceded in the court below, with the exception of the two so-called Luxford petitions which appear here to be sufficient.

MR. CHIEF JUSTICE ALLEN, MR. JUSTICE CAMPBELL and MR. JUSTICE WHITFORD not participating.   MR. JUSTICE ADAMS dissents.

MR. JUSTICE ADAMS dissenting.

The originals of all of the primary nomination petitions that were held to be invalid, were exhibited to this court; they contained the requisite number of genuine signatures of qualified electors, and in form and substance complied with C. L. 1921, section 7536, except that it is claimed, and it is held by the court in this proceeding, that petitioners should have signed their names twice, once on the petition and again on the affidavit, both of which were combined on the same page.   I respectfully disagree with the opinion.   I think that when

the petitioning electors signed their names once and swore to the things required by statute, it was as good as if they had signed their names twice or a dozen times on the same page.

If there were a question of fraudulent signatures, or of voters not qualified, the situation would be different, but the trial court found that the petitioning electors acted in good faith and with honesty of purpose. This is not contradicted, and this court has repeatedly held that it is controlled by the rulings of trial courts as to matters of fact. The notary's certificate in each petition contains all that the statute requires as to the acknowledgment and oath of the signers. His certificate stands unimpeached. I do not see what more could have been done to establish its verity.

It frequently happens that the makers of instruments written on more than one page, like wills and other important documents, sign their names on the margin of each page, except the final sheet, which is subscribed by the maker at the end of the writing. Each page is thus identified properly, and substitution of pages and consequent fraud is prevented. No doubt this is one of the purposes of the provision in section 7536, which has never been construed by this court before, and which requires, among other things, that the affidavit of the subscribing electors shall be endorsed on the sheet on which their names shall be signed, but nowhere does the legislature seem to have called for the unnecessary duplication referred to; i. e., repetition of signatures of the same parties on the same sheet; at least, it is not mentioned in the Session Laws.

Conceding the force of the divided opinion of this court in *Cowie v. Means,* 39 Colo. 1, 88 Pac. 485, as a precedent in construing C. L. 1921, section 7581, under the 1891 law, the one there under observation, and granting its partial similarity to C. L. section 7536, passed in 1910, after the decision in the Cowie case, nevertheless, there having been no previous interpretation of section 7536 before

this case came up, I think that we should avail ourselves of the opportunity to give it a natural construction, without fettering ourselves to ancient error.  No property rights or titles are predicated on that decision, and so the common argument in favor of the rule of stare decisis does not apply.  Even if it did, in a suit which has for its only object the compelling of thousands of voters to write the names of their choice of candidates for precinct committeemen and committee women on their ballots with pen and ink, if they vote for them at all, instead of having the names printed on the ballots for the convenience of the electors and the election officials—in such a case I think we ought to apply our own reasoning, rather than that of a divided court interpreting another statute twenty years ago.

The unreported decision in *Robinson v. People,* known as the Moffat Tunnel case, referred to in the majority opinion here, appears to consist of a court order, with no ground of decision given; many grounds of error were alleged, but whether or not the point involved in this matter was a reason for the decision there, seems to rest solely upon tradition; there were two sheets to each petition in that case, and no pretense was made to have the rejected signatures and affidavits on the same page, as they were in this case.

It is a well-known and generally conceded fact that elections are for the sole purpose of giving expression to the will of the electorate.  For this reason, the laws relating to the drafting and filing of nomination certificates should be liberally construed for such purpose, without violating any express statutory provisions, particularly when the element of fraud is wholly lacking, as it is in this case.

To summarize, we have this anomaly in the Colorado law:  A man or woman can deed all that he or she owns, with one signature and acknowledgment, without raising a prima facie suspicion of fraud or deceit upon his or her part, or upon the part of the acknowledging officer; in fact, under certain conditions, no acknowledgment at all

is necessary (C. L. 1921, section 4905); an oath upon which a man's life may depend, may be taken in court without being subscribed; but when the purpose is only for the simple matter of having names of certain candidates printed on a ballot, to save the time and labor of the voters and election officials at a primary election, it is necessary, under the court's ruling, when the petition is on only one sheet, for the petitioning elector to sign his or her name twice on the same page with his petition and affidavit, or else both such petition and the jurat of the officer taking the oath will be discredited, even though the court holds that the petition is made in good faith. A statute should not be construed so as to give it an absurd meaning, but I fear that in this case the reasoning employed by the court has resulted in holding that the legislature, merely by its silence, has loudly proclaimed a thing that it would not have thought of saying if it had used its voice. I have the highest regard for my learned associates, and the utmost respect for their views; I know that they have interpreted the law as they believe it to be, but I regret that I am unable to agree with them, and I venture to hope that a way may be eventually found leading to a more rational construction of this law, in favor of the qualified electors of the state.

I respectfully dissent for the above reasons.