(No. 31188.—

AUGUST DANIELS *et al.,* Appellees, *vs.* WALTER R. CAVNER, City Clerk, Appellant.

*Opinion filed November 22, 1949.*

FRED P. SCHUMAN, of Granite City, and HAROLD G. TALLEY, of Alton, for appellant.

JESSE R. BROWN, of Edwardsville, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellees, seven in number, designating themselves as residents, citizens, taxpayers and voters of the city of Venice, filed, on March 26, 1949, their petition in the circuit court of Madison County, seeking a writ of *mandamus* against Walter R. Cavner, appellant, as city clerk of said city. The petition prayed that he be commanded to print the names of certain of appellees, as candidates for various city offices, on the ballot to be used at the city election of April 19, 1949. It further prayed that appellant be directed to proceed with the steps necessary to have the proper authorities consider objections made by appellees to nominating petitions of other candidates. Appellant filed a motion to strike, and, after hearing, the trial court struck the portion relating to the objections to other petitions, but denied the motion as to the balance of the petition. Thereafter, appellant filed his answer, and after hearing evidence in open court, the trial judge, on April 14, 1949, entered judgment awarding a writ of *mandamus* which directed that appellant place upon the ballot the names of certain appellees, to-wit: August Daniels, William Rogan,

Edward Foley and Carl Wallen, as independent candidates for mayor, city clerk, city treasurer and police magistrate, respectively. Appellant filed notice of appeal to this court on the same day the order was entered, which appeal acted as a *supersedeas*. We take jurisdiction on the ground that a franchise is involved. *Progressive Party* v. *Flynn,* 401 Ill. 573; *United States* v. *Hrasky,* 240 Ill. 560; *People ex rel. Powell* v. *Hartley,* 170 Ill. 370.

The principal contentions of appellant in this court are that: (1) the entire issue has become moot since the date of the election has long since passed; (2) the nominating papers of appellees were not presented to appellant as city clerk within the time required by law; (3) the nominating papers were not in the form provided by law; and, (4) appellees as purported candidates of an established political party, as set forth in their petitions, could not be legally nominated as independent candidates by said nomination papers.

As to the first contention, that we should not review because the questions have become moot, the argument of appellant is that since the election has already been held, any direction to add names to the ballot would now require a useless and impossible act. We find the law to be that where an appeal is taken from a lower court's decision refusing to certify names for an election, and the time of the election has passed pending the appeal, the question is moot in the court of appeal. (*Mills* v. *Green,* 159 U.S. 651, 40 L. ed. 293; *Richardson* v. *McChesney,* 218 U.S. 487, 54 L. ed. 1121.) However, where the writ of *mandamus* has been ordered to issue by the lower court and its enforcement has been prevented by defendant's act of appealing from the order, thus necessarily postponing the appeal court's decision on the issues until after the election has occurred, the questions are not moot and will be considered on appeal. (*People ex rel. Giese* v. *Dillon,* 266 Ill.

272.) Here, the trial court issued the writ of *mandamus*, thus the issues did not become moot.

Much evidence was introduced in the trial court to determine the question of whether the nominating papers of appellees were presented to appellant at his residence before or after the hour of midnight ending the day of March 15, 1949, the last day for filing. Without detailing the evidence, suffice it to say that appellees' witnesses testified that the petitions were presented to appellant at his residence a few minutes before midnight, while appellant's witnesses fixed the time as being a few minutes after midnight. Appellant testified that when he was handed appellees' petitions, he told them it was too late, and that he took them and made a notation on them that they had been left with him at 12:12 A.M. March 16, 1949. He further testified that his office hours at the city hall were between 8:30 A.M. and 4:30 P.M. and that the girl employed in the office arrived about 9:00 A.M. and remained until 5:00 P.M. Appellant's contention is that the finding of the trial court is against the manifest weight of the evidence. Neither party, however, has questioned the propriety of filing nomination papers at the clerk's residence rather than his office, which issue, we feel, is the determinative one in this case.

The pertinent portion of the Election Code which governs the time and place of filing nomination petitions in cities such as Venice, is that part of section 10-6 (Ill. Rev. Stat. 1947, chap. 46, par. 10-6,) which provides that "certificates of nomination and nomination papers for the nomination of candidates for the offices in cities, villages and incorporated towns, * * * shall be filed with the clerks of the townships, cities, villages and incorporated towns at least thirty-five days previous to the day of such election." *Mandamus* is an extraordinary remedy, and one seeking the writ must show a clear right to it. (*Wilson* v.

*Board of Education,* 394 Ill. 197; *Friedman* v. *City of Chicago,* 374 Ill. 545; *People ex rel. Davidson* v. *Bradley,* 382 Ill. 383.) A petition for *mandamus* must set forth every material fact necessary to show that it is the duty of the person against whom the writ is sought to perform the acts sought to be compelled. (*People ex rel. City of Chicago* v. *Board of Review,* 326 Ill. 124; *People ex rel. Parker* v. *Board of Appeals,* 367 Ill. 559.) The burden rests on the relator to show every material fact necessary to establish the existence of such right and duty. (*People ex rel. Callahan* v. *Whealan,* 356 Ill. 328.) The first and principal question before us is whether the evidence introduced by appellees in support of their petition shows a "filing with the clerk" such as would create a duty on his part to put the names of appellees, who were candidates, on the ballot.

We do not find that this court has ever been called upon to determine whether a presentation of nominating papers to a clerk at his residence after office hours constituted a filing with the clerk within the meaning of the Election Code. Several cases of like nature have arisen in other States. In *Cowie* v. *Means,* 39 Colo. 1, 88 Pac. 485, persons with nomination certificates found the Secretary of State of Colorado on a railway train at the Denver depot on Saturday evening at 7:00 P.M., being the last day for filing such certificates, and there handed him the documents. The secretary stated he could not file them at that place but would look them over. On the Monday following, he returned them advising the parties that he declined to receive or file the certificates as not being filed in apt time. The contention was made that handing the certificates to the secretary at the railway station was a legal filing thereof. The court would not so hold, stating that the object of filing the certificates was to give notice of them to the public, which notice could not be given by placing them in the pocket of a State officer wherever he

might be found. It further stated that such a practice would lead to unutterable confusion and open the door to fraud and corruption. It was held that to constitute legal filing, which would enable the candidates to have their names placed on the ballot, the certificates should have been filed at the office of the Secretary of State with some person in charge, during business hours, and at a time not less than the number of statutory days before the election.

In *Johnson* v. *Holm,* 198 Minn. 192, 269 N.W. 405, there was an attempt to file a petition to place a name on the ballot for the office of Governor of Minnesota. The office of the Secretary of State was closed on Saturday afternoon, Saturday being the last day for filing. An unsuccessful attempt was made at 4:00 P.M. on that date to file the petition at the office which was found to be closed. At midnight two persons took up a vigil at the closed door and remained there until opening time Monday morning, at which time the petition was refused on the ground that the time had then expired. The Minnesota Supreme Court held that the fact that the office was not kept open after the usual hour of closing could not be the basis for relief, since the customary hours of the office were well known.

The situation in *McQueston* v. *Hinkle,* 130 Wash. 525, 228 Pac. 299, was that an aspirant for State office in the State of Washington mailed his declaration of candidacy on Saturday. The Secretary of State's office closed at noon on that day, and the letter containing the declaration, which reached his lock box at 2:00 P.M. the same day, was not received by the secretary until the following Monday, beyond the last day for filing under the statute. The court held the filing was not timely, saying the applicant was required to take notice of the Saturday noon closing and that if he chose to wait until the last day, he should have tendered his declaration within the hours when the secretary's office was customarily open for the transaction of business. In another Washington case, *State* v. *Batch-*

*elor,* 15 Wash. 2d 149, 130 Pac. 2d 72, a petitioner for nomination called at a closed office at 4:00 P.M. on Saturday, the last day for filing his petition, and the court held such act to be ineffective to get his name on the ballot.

Also helpful, and similar to the case before us, is *Brelsford* v. *Community High School Dist.* 328 Ill. 27. There a petition to contest an election was taken to the residence of the circuit clerk when it was found that the clerk's office was closed on Saturday afternoon, that being the last day for such filing. The clerk was not at home so the petition was left with his daughter, who was also his deputy, when she declined to go to the clerk's office at petitioners' request. While at home, and as deputy, she placed a file mark on the petition. We held such procedure ineffective to constitute filing within the prescribed time, stating: "To file an instrument it must be delivered to the proper officer at the office where it is required to be filed, and a delivery to the officer at any other place, even though he indorses it filed, is not sufficient. * * * The delivery of the petition to the clerk at his residence was of no more effect until he filed it in his office than the delivery to any other agent of the petitioners for the purpose of filing in the court and was of no effect until it was so filed." In the *Brelsford case* the statutory requirement involved was "filing in the circuit court or superior court within thirty days," while in the instant case the words of the statute are "filed with the clerk." We are of the opinion that both requirements demand a similar result, *i.e.,* that filing "in the court" or "with the clerk" means filing at the customary office and within the customary office hours.

Appellant testified that he had an office in the city hall of Venice, and that, although he was not present there at all times, a woman employee was there to transact the business of the office from 9:00 o'clock in the morning until 5:00 o'clock in the afternoon. Under such situation the general rules relating to attempted filing away from

the office, as laid down in the *Brelsford* opinion, likewise apply in this case. Appellees' petition for *mandamus,* and the proof offered to sustain it, fail to set forth that appellees, or any one of them, attempted to file their petitions at the clerk's office on the day in question either before or after the normal closing hour. In this regard it is significant that appellees' witnesses testified that they did not start to circulate their petitions until after nightfall of March 15, 1949, the last day for filing. Emmett Patterson, one of appellees, testified that he started getting signatures on the petition in his hands at 11 :00 P.M. of that night.

It appears that appellant did accept nomination papers of persons other than appellees, at his home during the night of the last day for filing. We do not agree, as appellees urge, that such actions on his part established a custom and precedent which are controlling as to appellees' petitions. A contention of like nature was made in *State v. Marsh,* 120 Neb. 287, 232 N.W. 99, where a petition of nomination for senator was mailed to the office of the Secretary of State of Nebraska, and received by the latter beyond the expiration date of filing. Because it was placed in the mail before the expiration date, the secretary ruled that it was in effect filed in his office at the time it was deposited in the mail. The court did not sustain the secretary in his ruling, holding that the latter could not construe or interpret a statute where no obvious ambiguity could be found. The Nebraska court concluded that to allow the Secretary of State to so construe the election statute, would be to allow him to legislate as to the time of filing.

The situation is the same here. The statute states that nominating papers shall be filed with the clerk, which direction has been construed to mean with the clerk at his official office and during usual business hours. To allow the clerk to accept nomination papers at any other time would be contrary to our election statute and give arbitrary power to the clerk not intended. The purpose of such a rule is

obvious, for it is not only the clerk who is interested in the proper and timely filing of nomination petitions, but other candidates for office and citizens and voters in general have a vital interest in the question of a waiver or extension of time for the filing of nomination papers. Papers of such nature should be contained in the files and records of the clerk, subject at all times to the inspection of the whole public, both for their information and for their examination to see if objections may lie to their sufficiency. To allow filing at whatever place the clerk might be found would defeat such objects, and, as previously pointed out in *Cowie* v. *Means,* 39 Colo. 1, 88 Pac. 485, the practice of indiscriminate filing could only lead to confusion and possible fraud.

In this case the papers were presented to the clerk at his home, long after the closing of his official office, and with no attempt ever having been made to file at the office. It is true that appellant made an endorsement on the papers, stating that they had been filed and noted the time they had been brought to his residence; however, filing denotes placing the documents on file as a record for the information of the public, thus appellant's notations could not alone constitute an effective filing. For the foregoing reasons, we hold that nominating papers of appellees directly interested in the writ of *mandamus* were not filed in the time or manner contemplated by the election statute. It was error therefore to award the writ. Such conclusion makes it needless to consider the other objections raised by appellant in this court.

Appellees have assigned cross errors in their brief, relating to the trial court's refusal to direct appellant to bring about a hearing on objections filed by certain of appellees to the sufficiency of the nominating papers of other candidates. Appellant filed a motion to strike such cross errors on the ground that appellees did not file a cross appeal as required by Rule 35 of this court. The

motion has been taken with the case, and from our examination of the record is well grounded. It is allowed and the cross errors stricken. *Bryant* v. *Lakeside Galleries, Inc.* 402 Ill. 466.

The judgment awarding the writ of *mandamus* is reversed and the cause remanded to the circuit court of Madison County with directions to cancel said writ.

*Reversed and remanded, with directions.*