People of the State of Illinois ex rel. Fernando Ceja, Plaintiff-Appellee and Cross-Appellant, v. Orlando W. Wilson, Superintendent of Police of the City of Chicago, William E. Cahill, Reginald DuBois, and Quentin J. Goodwin, Members of and Constituting the Civil Service Commission of the City of Chicago, Otto H. Loser, Comptroller of the City of Chicago, and William G. Milota, Treasurer of the City of Chicago, Defendants-Appellants and Cross-Appellees.

Gen. Nos. 53,199, 53,264. (Consolidated.)

First District, Fourth Division.

October 21, 1970.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellants.

Richard F. McPartlin, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants appeal from the issuance of a writ of mandamus which commanded them to take all steps necessary to withdraw and cancel the resignation of plaintiff from his position as a probationary patrolman in the Chicago Police Department and to reinstate plaintiff as a patrolman with back pay.

Plaintiff cross-appeals from that portion of the order which assessed no costs against the defendants.

On May 31, 1966, after passing the civil service examination for patrolman, plaintiff was appointed a patrolman for a six-month probationary period pursuant to section 5 of Rule IV of the Rules of the Civil Service Commission, 1967, which provides:

> Probation. Original appointment shall be on probation for a period of six months. In no case shall a probationer be discharged until after the appointing officer has received from the Commission a notice in writing that the Commission has approved such discharge. Time served on probation, whether continuous or not, shall be credited upon the period of probation.

He was assigned to the Chicago Police Training School. During the period in which plaintiff attended the school, Robert E. McCann, Director of the Police Training School, and several school instructors noticed that plaintiff had a tic. Director McCann testified at trial that the tic was manifested by "a constant moving of the head, eyes closed, shoulders moving; I think the closest kind of oral description I could give would be a punch-drunk boxer." He also added that the tic was more than a twitch, it was a severe jerk with a face motion.

At the request of Director McCann, Dr. James Carroll, Chief Surgeon of the Police Department, who was in charge of the police medical department, and Dr. Avon Mendelson, a psychologist for the Police Department, observed the plaintiff. As a result of the initial eight-

week test, Dr. Mendelson noticed that there was an unusual amount of impulsivity and aggressiveness on the part of plaintiff, in addition to an obvious tic, body contortions and grunting sounds. Dr. Carroll and Dr. Mendelson reviewed these tests together with plaintiff's history and background. They decided that there was an excessive amount of impulsivity and lack of emotional control on the part of the plaintiff.

The plaintiff was then referred to the police medical section, which referred him to Dr. Clifton Rhead of the Police Psychiatric Advisory Board. On August 30, 1966 (several days before plaintiff's graduation from the training school but three months prior to the expiration of the probationary period), Director McCann received a report from Dr. Carroll which related the findings of Dr. Rhead that plaintiff had a psychogenic tic with poor impulse control. Dr. Rhead recommended:

> It is believed that the possibility is strong that this man would act-out his rage if the provocation were strong enough. Since the likelihood of such provocation is greater in his chosen field (police work) it is recommended that he be dropped from the training program at this time.

Upon receipt of this report, Director McCann immediately sent for the plaintiff. The director explained to plaintiff that based on this report and on observations made in the classroom, he would have to recommend to the Superintendent of Police that plaintiff be discharged from the police force. The director went on to explain that he was sympathetic toward plaintiff and that since the discharge was not predicated on a disciplinary situation, it was only fair to give plaintiff the option of resigning, which he did. Director McCann testified at trial that he thought that plaintiff resigned because of the obvious implications that could have followed from being fired from the Police Department.

At the time the plaintiff was directed to go to Director McCann's office, his brother, Salvatore Ceja, a Chicago policeman, was curious as to what was happening, so he

went over to the director's office. When he arrived, the plaintiff was already in conference with the director.

When the plaintiff emerged from Director McCann's office and saw his brother, plaintiff asked the director if his brother could speak to him. Director McCann invited both the plaintiff and his brother into his office. The testimony at trial of both the plaintiff and his brother agreed with that of Director McCann to the effect that the director read and explained the medical report to them; that the medical report indicated that under certain stress conditions the plaintiff might overreact and injure or kill someone; and that plaintiff had signed a letter of resignation.

At trial, Director McCann also testified that he made no threats to force plaintiff to sign the letter of resignation but rather, was attempting to be helpful, that he spoke to the plaintiff as a father would to a son. The plaintiff's brother supported the director's testimony. He testified that he did not hear the director say anything that would be considered a threat if plaintiff did not resign, and that he thought it was true that for job preference purposes a resignation was better than being discharged.

The plaintiff testified that when his brother asked what the effect would be if other psychiatrists repudiated Dr. Rhead's report, the director said that he could not take the plaintiff back; that he was simply carrying out his duty as director; and that it was now out of his hands.

At trial, plaintiff introduced by stipulation medical testimony which consisted of a copy of a psychiatric examination requested by plaintiff, a report of a clinical psychologist, and the testimony of a psychiatrist who examined plaintiff at the request of plaintiff's attorney. Each man who examined the plaintiff noticed the tic and commented about it. However, they found that the plaintiff did not demonstrate any intention of utilizing authority in a destructive manner and that based on plaintiff's strong feelings of desire to become a police officer, he should be given the opportunity to become one.

Father Francis Maloney also testified for the plaintiff. He testified that he knew the plaintiff very well; that

plaintiff had a temper but it was not abnormal; that plaintiff had a good reputation as a peaceful, law-abiding citizen, and for honesty and integrity; that plaintiff got along well with other people; and that he never observed any signs of overt aggressive brutality or violence on the part of the plaintiff.

The court found that it was an abuse of discretion by defendants to refuse plaintiff's request to withdraw his resignation and ordered the issuance of the writ of mandamus.

Opinion

Defendants contend that the court erred in issuing the writ of mandamus (1) since there was no proof that plaintiff's resignation was forced or involuntary and (2) because it was not an abuse of discretion by defendants to refuse to permit the withdrawal of plaintiff's resignation.

Defendants argue that plaintiff's resignation was free and voluntary. Plaintiff, however, claims that his resignation was forced and involuntary and that Director McCann's offered choice of either resigning or being discharged was really no choice at all. In entering his findings of fact, the trial judge stated:

> First of all, I will say this as a finding of fact, I cannot conclude that but Director McCann has the highest motives. After all, it is his responsibility to the finished product, and if he has evidence before him that leads him to conclude that the finished product is not what he thinks it should be, then I think he has a right to exercise his power, and he had evidence before him where he had every right in the world to conclude that this particular trainee would not be a good policeman. Now the question is whether or not the question has been raised whether or not this particular resignation was free and voluntary. Whatever that man here—I'm not really sure —the fact is he is an adult man. The Director mentioned his option to him as a close friend, "Look, we have this problem here. I think it will be better for you to resign rather than be fired." This happens

every day; it happens not only on the Police Department, it happens in other positions.

■ We, too, conclude that under the evidence presented plaintiff's resignation was free and voluntary.

■ The trial judge held, nevertheless, that the Superintendent abused his discretion in not permitting plaintiff to withdraw his resignation. Defendants contend, however, that the evidence adduced by plaintiff failed to show either a duty imposed on the Superintendent of Police to accept plaintiff's withdrawal of his resignation, or an abuse of discretion by any defendant or any member of the Police Department which would necessitate the issuance of the writ of mandamus. A petition for mandamus is an extraordinary remedy, and one seeking the writ must show a clear right to it. Daniels v. Cavner, 404 Ill 372, 88 NE2d 823; Wilson v. Board of Education of School Dist. No. 126, 394 Ill 197, 68 NE2d 257; and Friedman v. City of Chicago, 374 Ill 545, 30 NE2d 36. In People ex rel. Pignatelli v. Ward, 404 Ill 240, 243, 88 NE 2d 461 the court stated:

> Mandamus is an extraordinary remedy, and the petitioner must adduce proof in support sufficient to show a clear right to the writ. (People ex rel. Dunderdale v. City of Chicago, 327 Ill 62.) . . . This court will not use a writ of mandamus to compel a party to perform an act unless it is affirmatively made to appear that it is his clear duty to do so; the petitioner must establish every material fact necessary to show the plain duty of the respondent before courts will interfere. (Bengson v. City of Kewanee, 380 Ill 244.) No intendments will be indulged in to support the issuance of the writ.

■ In the instant case, the plaintiff failed to introduce proof in support of his petition sufficient to show a clear right to the writ. Furthermore, no procedure or authorization has been advanced by plaintiff which imposes a duty on the Superintendent to accept a withdrawal of a resignation. Rather, plaintiff relies on section 2 of Rule IX of the Rules of the Civil Service Commis-

sion to show that his resignation should have been withdrawn or cancelled. Section 2 provides:

> Resignation. A copy of the resignation of an officer or employee from the classified service shall be filed with the Commission by the head of the department receiving and accepting same. *The Commission may permit the withdrawal of a resignation and its cancellation upon application at any time within thirty days after the filing of same, provided, the head of the department concerned approves of such withdrawal and cancellation.* (Emphasis ours.)

However, in the instant case, even assuming that plaintiff was in the classified service as a patrolman, the withdrawal of his resignation failed to meet the requirements of section 2, since the Superintendent as head of the department had not approved the withdrawal of the resignation. Although the court found it was an abuse of discretion to refuse plaintiff's request to withdraw his resignation, we find that there was no question of the use of discretion since plaintiff has shown no right to an acceptance of his resignation or that there was a duty on the Superintendent to accept it. Therefore, there was no basis for a writ of mandamus.

Plaintiff further argues that "a probationer may not be discharged unless the head of the department sets forth in writing his reason therefor, and secures the consent of the Civil Service Commission." Plaintiff cites Ill Rev Stats, c 24, § 10–1–14, 1967, in support of his argument. Section 10–1–14 provides in part:

> At or before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of the commission, discharge him upon assigning in writing his reason therefor to the commission.

In the instant case, however, the plaintiff voluntarily resigned his position as a probationary patrolman. The plaintiff was never discharged. Therefore, the discharge

portion of section 10–1–14 is not applicable and plaintiff's reliance on it is misplaced.

The order of the trial court issuing the writ of mandamus commanding the defendants to cancel and withdraw plaintiff's resignation and to reinstate plaintiff as a patrolman with back pay is reversed. Based on this holding, it is unnecessary to discuss plaintiff's cross-appeal from that part of the order which assessed no costs against the defendants.

Reversed.

STAMOS, P. J. and ENGLISH, J., concur.