EMANUEL CHRISTOPHER WELCH *et al.*, Plaintiffs-Appellees, v. THE EDUCATIONAL OFFICERS ELECTORAL BOARD FOR PROVISO HIGH SCHOOL DISTRICT 209 *et al.*, Defendants (Robert Smith, Indiv. and as the Secretary of Board of Education of Proviso Township High School District No. 209, Defendant-Appellant).

First District (2nd Division)   No. 1—01—0706

Opinion filed May 15, 2001.

Robert H. Ellch and Alan M. Mullins, both of Scariano, Ellch, Himes & Petrarca, Chtrd., of Chicago, for appellant.

Keri-Lyn J. Krafthefer, Robert K. Bush, and Dina M. Kapernekas, all of Ancel, Glink, Diamond, Bush, Dicianni & Rolek, P.C., of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal from a writ of *mandamus* issued by the Cook County circuit court against defendant-appellant Robert Smith as the secretary of the Board of Education of Proviso Township High School District No. 209. The writ was issued pursuant to count III of the complaint filed by plaintiffs-appellees Emanuel Christopher Welch, Lequita Neely, Archie B. Leach, Sr., and Michael J. Carlson, wherein plaintiffs sought to compel defendant-appellant Smith to certify their names to the Cook County clerk as candidates for membership on the Board of Education of Proviso Township High School District No. 209 (the school board). Plaintiffs filed their nominating papers for membership on the school board on January 23, 2001, the last day for filing, but Smith contends that the papers were filed after 5 p.m. on that day and thus were untimely. Smith therefore declined to certify plaintiffs' names to the Cook County clerk for the April 3 ballot, and plaintiffs sought *mandamus* relief to compel him to certify their names. Smith argues on appeal that he had discretion to determine that plaintiffs' nominating papers were untimely filed and that he was thus under no obligation to certify plaintiffs' names for the ballot. He also argues that he did not lose authority to make such determinations once objections were filed challenging the timeliness of plaintiffs' nominating papers. Finally, he contends that it was improper for the circuit court to grant the relief requested, based on the record before it. For the reasons set forth below, we affirm the circuit court's granting of the writ of *mandamus* requested in count III of plaintiffs' complaint.

## BACKGROUND

According to plaintiffs' complaint, plaintiffs Welch and Neely went to Proviso East High School on January 23, 2001, to file nominating papers for themselves and plaintiffs Carlson and Leach as candidates for membership on the District 209 school board, in the election to be held on April 3, 2001. Plaintiffs allege that they arrived at the school at about 4 p.m. on January 23, the last day for filing nominating papers, and went to the office of the superintendent, where they had been told the nomination papers were being accepted. Welch told the superintendent's secretary that he wanted to be the last to file so his name would appear last on the ballot. She told him if he wanted to be last on the list, he would have to wait for an hour. She also told Welch and Neely that as long as they were in the office of the superintendent prior to 5 p.m., as they were, their petitions would be considered timely and would be accepted. According to plaintiffs, the superintendent himself confirmed this information at that time. Welch and Neely remained in the school's main office, which is immediately adjacent to the superintendent's office, and waited to have their petitions filed.

The complaint avers that defendant Michael Manzo, a school board member, and defendant-appellant Robert Smith, the school board secretary, entered the main office at about 4:55 p.m. accompanied by three security guards, including defendants Joseph Lukascek and Fred Gianneschi. Manzo apparently was there to file petitions for another school board candidate, Sharon Hudson. Plaintiffs allege that, contrary to the information they had been given by the superintendent and his secretary, Manzo indicated that the end of the line would be determined by the door of the main office, not the door of the superintendent's office. Manzo then submitted his candidate's nominating papers to the school district's staff for filing. Welch, who was the next person to file, then submitted the nomination papers for all four plaintiffs. Attached to plaintiffs' complaint are receipts for their nomination papers, which were time-stamped as follows: Carlson's, 5:04 p.m. on January 23, 2001; Leach's, 5:06 p.m.; Neely's, 5:07 p.m.; and Welch's, 5:10 p.m.

The complaint further states that on January 30, 2001, defendant Joseph Pantaleo filed objector's petitions with the District 209 education officers electoral board, challenging the nomination papers of plaintiffs Welch, Neely, Leach and Carlson. In his petitions, copies of which are attached to the complaint, Pantaleo alleged that the nomination papers were not filed until after 5 p.m. on January 23 and that they were thus invalid.

On February 1, 2001, Smith, the school board secretary, filed a certificate of ballot with the Cook County clerk, listing candidates for the District 209 school board to be included on the official ballot in the April 3 election. None of the four plaintiffs' names was on the list, a copy of which is attached to the complaint. Also attached to the complaint is a copy of a letter dated February 6, 2001, which Smith sent to Welch (and allegedly to each of the other three plaintiffs), informing him that because his nomination papers were filed after 5 p.m. on January 23, his name "ha[d] not been certified to the Cook County Clerk to be placed on the April 3, 2001[,] Consolidated Election Ballot."

In addition, the complaint recites that on February 6, the District 209 educational officers electoral board (the electoral board), which was made up of defendants Manzo and Smith and defendant Patrick Hernandez (not present), met to consider defendant Pantaleo's objections to plaintiffs' nomination papers. According to the transcript of proceedings, which was attached to plaintiffs' complaint, the electoral board declined to consider the objections or to dismiss them. Counsel for the electoral board explained that since plaintiffs' names had not been certified and thus were not on the ballot, it would be improper to

"go ahead" and consider the objections at that time. He also stated that it would not be proper to dismiss the objections, "just in case [plaintiffs' names] are put back on the ballot." Over plaintiffs' objections, the electoral board continued the matter for status to "[s]ee if something has been filed [in court]."

Plaintiffs filed their six-count complaint on February 14, 2001, against the electoral board; Michael Manzo, Robert Smith and Patrick Hernandez, as individuals and as members of the electoral board; Joseph Pantaleo, Fred Gianneschi and Joseph Lukascek; and David Orr in his capacity as Cook County clerk. In count I, they sought injunctive relief barring defendants Manzo, Smith and Hernandez from serving on the electoral board, and ordering a "properly-composed" electoral board to consider and rule upon the objections to plaintiffs' nomination papers. In count II, plaintiffs sought a writ of *mandamus* to the same effect. In count III, which is the only count involved in this appeal, plaintiffs requested a writ of *mandamus* compelling Smith to certify plaintiffs' names to the Cook County clerk as candidates for membership on the District 209 school board, in accordance with section 9—10 of the Illinois School Code (105 ILCS 5/9—10 (West 2000)), and sections 10—10 (10 ILCS 5/10—10 (West 2000)) and 10—15 (10 ILCS 5/10—15 (West 1994)) of the Illinois Election Code. Count IV of the complaint is a request for declaratory judgment, and counts V and VI allege due process and equal protection violations, respectively.

On February 20, 2001, the court heard arguments from both sides, during which the following colloquy took place:

"THE COURT: Well, from the *** record, apparently the [District's administrative] office was open.

Otherwise the file couldn't be—could not have been stamped.

MR. ELLCH [defendants' counsel]: I have no dispute that there were people there, your Honor.

We would never dispute that."

After hearing arguments, the court entered an order granting the writ of *mandamus* requested in count III against defendant Smith, ordering him "to certify the plaintiffs' names to the Cook County Clerk immediately." The court took no action on the complaint's remaining counts, and the relief sought in them is still pending.

In reaching its determination as to count III, the court concluded that once objections were filed (on January 30, 2001), the school board secretary lost jurisdiction to exercise discretion over the certification of plaintiffs' nomination papers. According to the court, it was then up to the electoral board to decide the factual issues raised by the objections. The court also concluded that there was no requirement that

nomination papers be filed by 5 p.m. on the last day for filing. According to the court, section 1—4 of the Election Code "requires only that the office remain open until at least 5:00 o'clock," and not that it must close at 5. The court noted that "[t]he fact that the petitions were in fact filed and were in fact received was proof that they were received during normal hours." Accordingly, "once they were received during the course of business hours they could not be unilaterally rejected by the office *** that accepted them."

Defendant Pantaleo subsequently settled with plaintiffs and withdrew his objections. On February 28, 2001, the court entered an order reflecting this settlement. On March 1, 2001, the court found, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just reason for delaying appeal of the February 20 *mandamus* ruling as to count III.

Defendant Smith filed a notice of emergency appeal and moved for an expedited briefing schedule, which motion was granted. On March 21, 2001, we entered an order affirming the decision of the trial court and indicated that this opinion would follow.

## DISCUSSION

Defendant Smith argues on appeal that the District 209 office hours ended at 5 p.m. on January 23, 2001, and that since the receipts for plaintiffs' nomination papers were time-stamped after 5 p.m., their papers were untimely filed. Smith thus contends that plaintiffs' nomination papers were not in apparent conformity with the Election Code, and he therefore had discretion to determine that they were invalid. We disagree.

The merit of Smith's position depends upon two underlying questions. First, what is the time frame within which nomination papers can be filed? Second, to what extent and under what circumstances, if any, may a school board secretary possess the authority to determine the timeliness of nomination papers? Each of these questions is covered by explicit statutory provisions. See 105 ILCS 5/9—10 (West 2000); 10 ILCS 5/1—4, 10—15, 10—8 (West 1994)).

■ With respect to the first issue regarding the timeliness of nomination papers, section 9—10 of the School Code provides in pertinent part:

"All petitions for the nomination of members of a board of education shall be filed with the secretary of the board or a person designated by the board to receive nominating petitions within the time provided for by the general election law." 105 ILCS 5/9—10 (West 2000).

Section 1—4 of the Election Code states:

"In any case in which this Act prescribes a period of time within

which petitions for nomination must be filed, the office in which petitions must be filed shall remain open for the receipt of such petitions until 5:00 P.M. on the last day of the filing period." 10 ILCS 5/1—4 (West 1994).

■ With regard to the second question concerning the authority of a school board secretary to determine the timeliness of nomination papers and to refuse certification based on that consideration, section 10—15 of the Election Code provides in pertinent part:

"Not less than 61 days before the date of the consolidated and nonpartisan elections, each local election official with whom certificates of nomination or nominating petitions have been filed shall certify to each election authority having jurisdiction over any of the territory of his political subdivision the names of all candidates entitled to be printed on the ballot for offices of that political subdivision to be voted upon at such election and direct the election authority to place upon the official ballot for such election the names of such candidates in the same manner and in the same order as shown upon the certification." 10 ILCS 5/10—15 (West 1994).

Section 10—8 of the Election Code states in pertinent part:

"Certificates of nomination and nomination papers ***, being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers ***." 10 ILCS 5/10—8 (West 1994).

■ As to the first question, whether plaintiffs' nomination papers were timely filed, we believe that they were. In the instant case, it is undisputed that January 23, 2001, was the last day on which nomination papers could be filed for the District 209 school board election to be held on April 3, 2001. As noted, plaintiffs filed their nomination papers on January 23 and were given receipts time-stamped as follows: Carlson's, 5:04 p.m. on January 23, 2001; Leach's, 5:06 p.m.; Neely's, 5:07 p.m.; and Welch's, 5:10 p.m. These time-stamps form the basis for Smith's contention that plaintiffs' nomination papers were filed after 5 p.m. and therefore were untimely.

Under section 9—10 of the School Code, "petitions for the nomination of members of a board of education" are to be filed "within the time provided for by the general election law." 105 ILCS 5/9—10 (West 2000). The time of day for filing is provided in section 1—4 of the Election Code, which as noted states that "the office in which petitions must be filed shall remain open for the receipt of such petitions until 5:00 P.M. on the last day of the filing period." 10 ILCS 5/1—4 (West 1994). On its face section 1—4 states that the office must remain

open *until* 5 p.m., but there is no requirement that the office must close at that time. Thus on its face section 1—4 merely purports to provide a floor but not a ceiling to limit the time during which an office may remain open after 5 p.m. See *First Bank & Trust Co. v. King*, 311 Ill. App. 3d 1053, 1058-59, 726 N.E.2d 621, 625 (2000) ("The most reliable indicator of legislative intent is the language of the statute, which is given its plain and ordinary meaning"); *Kunkel v. Walton*, 179 Ill. 2d 519, 534, 689 N.E.2d 1047, 1054 (1997) (court may not depart from plain language of statute by reading into it limitations that the legislature did not express); *cf. Mierswa v. Kusper*, 121 Ill. App. 3d 430, 436, 459 N.E.2d 1110, 1114 (1984) (construing statutory language stating that county clerk in counties of 500,000 or more population shall keep his office open "from 9 a.m. to 5 p.m. of each working day except *Saturday afternoons* and legal holidays" (emphasis added) (55 ILCS 5/3—2007(a) (West 1994)); concluding that under this language, "[t]he Cook County Clerk's office *** was lawfully required to remain open *at least until noon* on Saturday, and in fact remained open until 5 p.m. on the day in question" (emphasis added)). Moreover, even the appellant concedes that there is no prohibition on the face of the statute against an office remaining open after 5 p.m., stating in his reply brief that "the Election Code did not require the District Administrative Office to close at 5:00 p.m."

In this instance, the District's administrative office remained open after 5 p.m. on January 23, 2001, as is evidenced by the time-stamps on the receipts for plaintiffs' nomination papers. As noted, the Election Code requires only that the appropriate office be open *"until* 5:00 P.M. on the last day of the filing period" (emphasis added) (10 ILCS 5/1—4 (West 1994)). Since there is no language in the Election Code which states that nomination papers must be filed *by* 5 p.m. on the last day for filing, we conclude that plaintiffs' nomination papers here were filed "within the time provided for by the general election law" (105 ILCS 5/9—10 (West 2000)). See *Kunkel*, 179 Ill. 2d at 534, 689 N.E.2d at 1054 (court may not depart from plain language of statute by reading into it limitations that the legislature did not express).

Notwithstanding the foregoing, Smith argues that plaintiffs were required to file their nomination papers "within the District's customary office hours," which Smith asserts "ended at 5:00 p.m. on January 23, 2001." Thus Smith contends that plaintiffs' nomination papers were untimely filed. We disagree.

Attached to defendants' brief dealing with certain issues requested by the trial court is an affidavit of District 209 Superintendent Gregory Jackson. In his affidavit, which is dated February 19, 2001, Jackson states that "[t]he District's administrative office was open until 5:00

p.m. on January 23, 2001, as required by Section 1—4 of the Election Code to receive nomination papers." This of course does not establish, as Smith contends, that the office hours *ended* at 5 p.m. on that date. Just as section 1—4 of the Election Code, which Jackson references in his affidavit, requires only that the office remain open *until* 5 p.m., so Jackson's statement establishes only that the District's administrative office was open *until* 5 p.m. on January 23, and not that it closed at that time.

Moreover, in point of fact, even if the office closed at 5 p.m., there is no question that plaintiff Welch was already in the office before 5 p.m. Defendants themselves attached to their memorandum excerpts from Welch's deposition testimony in which he states that while in the office he saw defendant Manzo come into the main office "at about 4:55," thus establishing his own presence in the office prior to 5 p.m. This testimony was unchallenged and is in fact used assertively by defendants in showing who was present in the office when plaintiffs' nomination papers were filed. Thus even if the office were required to close by 5 p.m., which as we discussed earlier is not the case, this requirement would not have been violated since the statute does not say that once the office is closed, those already in it cannot complete their business. See *Kunkel*, 179 Ill. 2d at 534, 689 N.E.2d at 1054 (court may not depart from plain language of statute by reading into it limitations that the legislature did not express).

Smith points for support to *Daniels v. Cavner*, 404 Ill. 372, 88 N.E.2d 823 (1949), and *McReynolds v. Hartley*, 251 Ill. App. 3d 1038, 623 N.E.2d 913 (1993), but his reliance upon these cases is misplaced. In *Daniels* the appellees, candidates for various offices in the City of Venice, brought their nominating papers to the appellant city clerk's residence at around midnight on the last day for filing. The clerk told the appellees that they were too late; he then took the papers and made a notation on them that they had been left with him at 12:12 a.m. The appellees sought a writ of *mandamus* compelling the clerk to print their names on the ballot for the city election. The trial court granted the writ, but the supreme court reversed. According to our supreme court, the "determinative" issue was "the propriety of filing nomination papers at the clerk's residence rather than his office." *Daniels*, 404 Ill. at 375, 88 N.E.2d at 825. The court noted that there was no indication that the appellees had "attempted to file their petitions at the clerk's office on the day in question either before or after the normal closing hour." *Daniels*, 404 Ill. at 379, 88 N.E.2d at 826. The court concluded that in order for such a filing to be effective, it must be made "*at the customary office* and within the customary office hours." (Emphasis added.) *Daniels*, 404 Ill. at 378, 88 N.E.2d at 826.

In *McReynolds*, the petitioners filed objections to the nomination papers of Democratic candidates for various offices in Lockport Township, but the electoral board denied the objections. The petitioners then filed a petition for judicial review of this decision. The petition for judicial review was filed by the petitioners' attorney, who arrived at the office of the circuit clerk of Will County after 4:30 p.m. on March 15, 1993, the last day for filing this petition. A deputy clerk told the attorney that state law prevented her from taking any document for filing after 4:30 p.m., and she refused to accept it. The petition was filed the next day, and the trial court dismissed it as untimely. The appellate court affirmed, noting that it was undisputed that the clerk's official office hours "end[ed] at 4:30 p.m. on each business day." *McReynolds*, 251 Ill. App. 3d at 1040, 623 N.E.2d at 914-15.

As noted, the appellees in *Daniels* made no attempt to file their petitions at the clerk's office, either before or after the normal closing hour, going instead to the clerk's residence at around midnight, where the clerk told them that they were too late. Similarly, in *McReynolds* the court concluded that the petitioners' attorney arrived at the clerk's office after 4:30 p.m. The deputy clerk refused to accept filings after 4:30, and consequently the petition was not filed until the next day, which was clearly beyond the permitted time. Here, in contrast to *Daniels*, plaintiffs went to the District 209 administrative office to file their nomination papers, not to the school board secretary's residence. Further, in contrast to *McReynolds*, plaintiff Welch was inside the office prior to 5 p.m., and even though plaintiffs admit in their complaint that Welch asked to be the last to file, he did not ask to file after 5 p.m. Moreover, in contrast to both *Daniels* and *McReynolds*, plaintiffs' nomination papers were accepted by the appropriate personnel, not rejected. Neither *Daniels* nor *McReynolds* is applicable to the instant case.

Smith also relies upon *Anderson v. Illinois State Board of Elections*, 226 Ill. App. 3d 481, 589 N.E.2d 907 (1992), which is factually closer to the instant case but is distinguishable nonetheless. In *Anderson*, the plaintiff went to the branch office of the Illinois State Board of Elections to file several objections to nominating papers. He arrived at 4:55 p.m. on December 23, 1991, the last day for filing. The plaintiff filed one set of objections with the clerk but was unprepared to file a second set because he was required to locate an original petition among his papers. The clerk turned away and accepted two petitions from other parties, and then waited on the plaintiff again and accepted his second and third sets of objections. However, the clerk refused to accept the plaintiff's remaining objections, noting that it was after 5 p.m. A public notice provided that no objections would be accepted af-

ter the close of business at 5 p.m. The plaintiff sought *mandamus* relief compelling the Board to accept his remaining objections, but the trial court rejected the request, and the appellate court affirmed.

In *Anderson*, as noted, the clerk explicitly refused to accept objections after 5 p.m. Here, by contrast, plaintiffs' nomination papers were accepted, which is an indication that the office remained open, at least with respect to those who were already inside the office. Secondly, in *Anderson* there was a public notice stating that no objections would be accepted after 5 p.m., while in the instant case there was no indication of such notice. Finally, the appellate court in *Anderson* sustained the trial court's denial of a writ of *mandamus*, concluding that the trial court acted within its discretion. In the instant case, the trial court *granted* a writ of *mandamus*. It is one thing to say, as did the court in *Anderson*, that there were insufficient reasons to overturn the trial court's exercise of discretion in refusing the writ of *mandamus*, and it is quite another to say, as Smith would have it, that the trial court's decision in this case granting a writ of *mandamus* was clearly beyond its discretion. Thus both our decision and the decision in *Anderson* recognize the trial court's right or power to exercise its discretion to grant or to deny the *mandamus* remedy based upon the respective individual facts in each case. We should not reverse here unless we find that there was an abuse of discretion, and we do not so find. *Anderson* is of no help to Smith.

Accordingly, we conclude that, contrary to Smith's contentions, plaintiffs' nomination papers were timely filed, and consequently Smith had no discretion in this instance to determine otherwise.

■ Since we hold that these documents, under the facts presented, were not untimely, there is no necessity to dispose of the second question regarding the power of a school board secretary to make determinations as to timeliness in the first instance. Nevertheless we note, as a wholly independent ground, that since a determination as to the timeliness of nominating papers cannot simply be made from a mere time-stamp on the face of the document, but instead would require an analysis of the circumstances resulting in that time-stamp, such a determination would not be one for a school board secretary to make.

Under the Election Code, a "local election official" such as a school board secretary has limited discretion to determine whether nominating papers are in "apparent conformity" with the law. 10 ILCS 5/10—8, 10—15 (West 1994). Section 10—15 provides that such officials "shall certify *** the names of all candidates entitled to be printed on the ballot." 10 ILCS 5/10—15 (West 1994). Candidates so entitled are "those whose nominating papers are (1) filed as required

by the [Election] Code, (2) in apparent conformity with the Code when filed, and (3) not subject to a duly filed objection." *North v. Hinkle*, 295 Ill. App. 3d 84, 87, 692 N.E.2d 352, 354 (1998); see 10 ILCS 5/10—8 (West 1994). In determining whether a document is in "apparent conformity" with the law, the local election official is limited to the face of the document, and he may not go behind what appears on the face. See *People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76, 107 N.E. 583, 584 (1914). "He is given no discretionary power when a petition proper on its face is filed. His only function is to determine whether, upon the face of the petition, it is in compliance with the law." *Dillon*, 266 Ill. at 276, 107 N.E. at 584. "He *** has no judicial powers, and where the petition presented appears on its face to be in compliance with the statute he cannot institute an investigation to determine" whether underlying factors render it invalid. *Dillon*, 266 Ill. at 276, 107 N.E. at 584. Thus any determination concerning the validity of petitions bearing the later time-stamps would be outside the latitude of a school board secretary's authority, since these time-stamps do not clearly establish that the papers are not in conformity with the Election Code.

As previously discussed, under section 1—4 of the Election Code there is no blanket prohibition of the filing of nomination papers after 5 p.m. Thus the timeliness of the filing of such nominating papers would be impacted by various facts and circumstances surrounding their submission for filing. As already indicated, the variables that would require consideration include the following: (1) whether the office was in fact open when the candidate arrived; (2) what, if any, was the announced closing hour and/or the customary hours for closing? (3) was the bearer of the nominating papers inside the office before any such announced closing time? and (4) was there a tender of the nomination papers for filing, and when were the papers tendered for filing? (Any timely tender that incurred a delay in filing as a result of a clerical delay would clearly require their acceptance. See *In re Estate of Davison*, 102 Ill. App. 3d 644, 645, 430 N.E.2d 222, 223 (1981).) Each of these factors, individually and in conjunction with other factors, would clearly have a bearing in the determination of timeliness. Thus the simple fact that a document bears a time-stamp after 5 p.m. would by no means be sufficient to bar its acceptance. Rather, it would necessitate an investigation of the surrounding circumstances which, for the reasons already discussed, a school board secretary is not empowered to undertake.

Notwithstanding the foregoing, Smith points to *North v. Hinkle*, 295 Ill. App. 3d 84, 692 N.E.2d 352 (1998), in support of his contention that he had authority to determine the timeliness of plaintiffs'

nominating papers in this instance. *North* is clearly distinguishable from the instant case. In *North*, the plaintiffs filed nominating papers on the last day for filing, seeking to have their names placed on the ballot in the City of Amboy's municipal election. However, none of them included a statement of candidacy as required by section 10—5 of the Election Code. When the defendant city clerk did not certify their names for the ballot, the plaintiffs sought a writ of *mandamus* to compel her to certify their names. The trial court denied the request, explaining that since the plaintiffs did not file statements of candidacy, their nominating papers were not in apparent conformity with the Election Code. The appellate court affirmed, noting that the plaintiffs "concede[d] that their nominating papers were not in apparent conformity with the Code when filed." *North*, 295 Ill. App. 3d at 88, 692 N.E.2d at 355.

The distinction between *North* and the instant case is obvious. In *North*, the alleged defect in the plaintiffs' nominating papers was that they did not include a statement of candidacy. The Election Code explicitly requires such a statement of candidacy (see 10 ILCS 5/10—5 (West 1994)), and its absence is clearly manifest from the face of the papers. No investigation is required to make that determination. As noted, the plaintiffs in *North* also conceded that their nominating papers were not in conformity with the Election Code. Here, by contrast, there is no requirement in the Election Code that nomination papers be filed by 5 p.m. on the last day for filing. Moreover, time-stamps after 5 p.m. would not in any event categorically demonstrate that plaintiffs' nominating papers were not in apparent conformity with the Election Code. In addition, plaintiffs in the instant case make no concession that their papers failed to conform to the Code. In point of fact, the appellate court in *North* specifically focused on these factors, stating that the issue of whether nominating papers include statements of candidacy "is precisely the type of question that can be answered by a facial examination of the papers themselves." *North*, 295 Ill. App. 3d at 88, 692 N.E.2d at 355. Since the plaintiffs' papers did not include such statements, they "were not in apparent conformity with the [Election] Code, and defendant was empowered to make that ministerial determination." *North*, 295 Ill. App. 3d at 88-89, 692 N.E.2d at 355.

For the reasons set forth above, we conclude that plaintiffs' nominating papers were timely filed "within the time provided for by the general election law" (105 ILCS 5/9—10 (West 2000); 10 ILCS 5/10—6 (West 2000); 10 ILCS 5/1—4 (West 1994)), and that in any event Smith had no discretion to determine otherwise. Hence, he was obligated to certify plaintiffs' names for the ballot to the Cook County clerk.

Finally, Smith argues on appeal that it was improper for the trial court to grant the *mandamus* relief requested, on the basis of the record before it. He notes that defendants had no opportunity to file an answer to plaintiffs' complaint, adding that no evidentiary hearing was held. According to Smith, "[t]he entire record consisted of the complaint, memoranda by Plaintiffs and Defendants[,] and the Defendants' reply." Smith contends that plaintiffs produced no evidence to support their request for a writ of *mandamus* and that it was thus an abuse of discretion for the court to grant this relief. This argument is without merit.

■ *Mandamus* is a remedy that may be issued in the sound discretion of the court. *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981); *Johnson v. Washington*, 294 Ill. App. 3d 472, 474, 690 N.E.2d 660, 662 (1998). It is appropriate only where "the plaintiff has a clear right to the relief sought and the defendant has a clear duty to act and clear authority to comply with the writ." *Johnson*, 294 Ill. App. 3d at 474, 690 N.E.2d at 662; *People v. Latona*, 184 Ill. 2d 260, 277, 703 N.E.2d 901, 909-10 (1998).

■ In the instant case, these requirements were met. As noted, attachments to plaintiffs' complaint and to defendants' brief on issues requested by the trial court, which latter attachments included deposition excerpts of Welch assertively submitted by defendants to support their position, showed the following facts to be undisputed: The District 209 administrative office was open on January 23, 2001, until at least 5 p.m., and plaintiffs were inside the office prior to 5 p.m. In addition, the receipts issued for plaintiffs' nomination papers bear time-stamps of 5:04 p.m. on January 23, 2001; 5:06 p.m.; 5:07 p.m.; and 5:10 p.m. School board secretary Smith filed a certificate of ballot on February 1, 2001, which did not include plaintiffs' names; on February 6, 2001, he sent a letter to plaintiff Welch stating that his name was not certified for the April 3 ballot because his nomination papers were filed after 5 p.m.

Taking this information together with the statutes discussed above, no further evidence is needed to establish that plaintiffs have a right to the *mandamus* relief requested, *i.e.*, to have their names certified for inclusion on the ballot. Accordingly, we cannot say that it was an abuse of discretion for the trial court to issue a writ of *mandamus* compelling Smith to certify plaintiffs' names for the April 3, 2001, ballot.

Because of our disposition of this case, we need not consider the impact of filing objections on the discretionary power of a school board secretary, which has been raised by the parties. Since we have already

determined that Smith did not have such discretion in this instance, it matters not whether the filing of objections would divest him of authority that he did not possess in the first place.

We therefore affirm the trial court's granting of a writ of *mandamus* as requested in count III of plaintiffs' complaint.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.